**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| VIVIAN BLACKLEDGE and MICHAEL PATZ,<br><br>Plaintiffs,<br>v.<br><br>SUREWAY SUPERMARKET, WALTER H. MAPLES, INC., SHELLY JAMBON, DOES 1 – 10, ABC INSURANCE COMPANIES 1 – 10,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.:<br><br>Judge ______________<br><br>Magistrate ______________ |

## COMPLAINT

COMES NOW Plaintiffs Vivian Blackledge and Michael Patz, by and through undersigned counsel, to file this Complaint against the Defendants. In support, they state the following:

### I. INTRODUCTION

1. Vivian Blackledge worked as a cashier and stocker for Sureway Supermarket in Grand Isle, Louisiana. She worked there for about a year, left, and then was rehired in January 2016 because of her exemplary job performance. Her boyfriend Michael Patz also worked there, and the two of them lived in a small apartment rented to them by the store.

2. On April 10, 2016, a Sureway employee noticed that Vivian was not lifting a case of beer. He reported it to Shelly Jambon, the owner and head manager of Sureway. When Ms. Jambon asked Vivian why, Vivian explained that she was pregnant. Ms. Jambon sent her home in the middle of the shift, and told her not to return without a doctor's note.

3. On April 14, 2016, Vivian returned to work with a doctor's note. The doctor's note stated that Vivian should not lift over ten pounds because she had a high-risk pregnancy.

4. The next day, Ms. Jambon called Vivian on the phone, and said "if you can't lift over ten pounds, what do I need you for?" Vivian suggested ways she could still do her job tasks without lifting

over ten pounds. For example, she could type in heavy items' bar codes rather than lifting those items onto the check-out conveyor belt. Or she could move items can by can, rather than a whole box at a time. Ms. Jambon said "that's not going to work out."

5. On April 15, 2016, Ms. Jambon fired both Vivian and Mike. She told them they had eight hours to move out of their apartment. A Sureway manager whose husband was the Chief of Police threatened to call the police if Vivian and Mike did not vacate in the eight hours. So they moved out.

6. As a result, Vivian and Mike were jobless, homeless, and with a child on the way. Vivian and Mike stayed with a friend for a little while, and then had to live out of their car.

7. The way Defendants treated Vivian and Mike is illegal. Firing Vivian because of her pregnancy is barred by Title VII of the Civil Rights Act (as amended by the federal Pregnancy Discrimination Act) and the Louisiana Pregnancy Discrimination Act. The failure to make reasonable accommodations for Vivian's pregnancy-related medical complications violates the Americans with Disabilities Act. And evicting Vivian and Mike on eight hours verbal notice violates Louisiana landlord-tenant law and the Louisiana Unfair Trade Practices Act.

8. This civil action seeks compensatory, punitive, and other relief for Defendants' illegal termination and eviction of Vivian and Mike.

## II. <u>JURISDICTION AND VENUE</u>

9. Plaintiffs' claims arise under the laws of the United States and Louisiana. This Court has jurisdiction over Plaintiffs' claims of federal rights violations, enforceable under Title VII of the Civil Rights Act as amended and the Americans with Disabilities Act, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). This Court has supplemental jurisdiction over Plaintiffs' Louisiana state law claims in accordance with 28 U.S.C. § 1367.

10. The venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claim occurred in Jefferson Parish, Louisiana situated in

the Eastern District of Louisiana.

## III. THE PARTIES

*Plaintiffs*

11. Plaintiff **Vivian Blackledge** is of suitable age and capacity to file this suit. At all relevant time during this suit, she was a resident of Jefferson Parish in the Eastern District of Louisiana.

12. Plaintiff **Michael Patz** is of suitable age and capacity to file this suit. At all relevant time during this suit, he was a resident of Jefferson Parish in the Eastern District of Louisiana.

*Defendants*

13. Defendant **Shelly Jambon** is on information and belief, the owner of Sureway Supermarket and Walter H. Maples, Inc. She served as landlord during the time of Ms. Blackledge's employment and subsequent wrongful eviction based on her termination. On information and belief, she is domiciled in Jefferson Parish in the Eastern District of Louisiana. Ms. Jambon may have used the following names in the past: Shelly Maples, Shelly Landry, or Shelley Landry.

14. Defendant **Sureway Supermarket** is a business establishment located in Grand Isle, Louisiana, in Jefferson Parish.

15. Defendant **Walter H. Maples, Inc.** is an active business corporation in good standing in Louisiana, and is the owner of the trade name Sureway Supermarket.

16. Defendants **Does 1 to 10** are as-yet unknown individuals or entities involved in employment discrimination against Ms. Blackledge and/or the wrongful eviction claims.

17. Defendants **ABC Insurance Companies 1-10** are as yet unknown insurance companies, who, upon information and belief, have issued and currently have in effect one or more policies of insurance covering one or more of the Defendants named herein.

## IV. FACTS

18. Plaintiffs reallege and incorporate each and every foregoing paragraph.

19. Plaintiff Vivian Blackledge worked as a cashier and stocker for Sureway Supermarket in Grand

Isle, Louisiana. She worked there for about a year and left on good terms. She was then was rehired in January 2016, because of her exemplary previous job performance. Her boyfriend Mike also worked at Sureway. Vivian and Mike lived in an apartment owned by Sureway. Each pay period, Sureway took rent money out of their paychecks.

20. On April 10, 2016, a Sureway employee noticed that Vivian was not lifting a case of beer. He reported it to Shelly Jambon, the owner and head manager of Sureway. When Ms. Jambon asked Vivian why, Vivian explained that she was pregnant. Ms. Jambon sent her home in the middle of the shift, and told her not to return without a doctor's note.

21. Vivian kept Defendants up to date about her efforts to get a doctor's note, which took more than one trip to a doctor.

22. On April 15, 2016, Vivian returned to work with a doctor's note. The doctor's note stated that Vivian should not lift over ten pounds because she had a high-risk pregnancy. Vivian's pregnancy was considered high-risk because she previously had a premature birth with her first child and then two subsequent miscarriages.

23. Later that day, Ms. Jambon called Vivian on the phone, and said "if you can't lift over ten pounds, what do I need you for?" Vivian suggested ways she could still do her job tasks without lifting over ten pounds. For example, she could scan heavy items in customer's grocery carts rather than lifting those items onto the check-out conveyor belt. Or she could move items can by can, rather than a whole box at a time. Ms. Jambon said "that's not going to work out."

24. That same day, Ms. Jambon fired both Vivian and Mike. Vivian's pink slip said that Vivian was fired because she "has not brought doctor's note to be off and has not kept employer informed as of when or if she will be returning to work." (Vivian never asked for any time off.)

25. Ms. Jambon told Vivian and Mike they had eight hours to move out of their apartment.

26. Vivian and Mike started packing, believing that they were required to move out. Ms. Jambon and

other managers hassled them while they were packing. One manager, Denise, threatened to call the police if they weren't out in eight hours – a threat underscored by the fact that Denise's husband was the Chief of the Grand Isle Police Department.

27. Vivian and Mike moved out that day. They stayed with a friend for a little while, and then had to live out of their car for a time while they tried to piece their life back together. .

28. In January 2017, Vivian timely filed a complaint with the Equal Employment Opportunity Commission regarding the discrimination she endured at Sureway.

## CLAIMS FOR RELIEF

### Count One – Violation of Rights Under Title VII of the Civil Rights Act, as Amended in the Pregnancy Discrimination Act (All Defendants)

29. Plaintiffs reallege and incorporate each and every foregoing paragraph.

30. Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act, bars an employer from discriminating against an employee on the basis of sex, including discrimination based on the employee's pregnancy. 42 U.S.C. § 2000e(k). A prima facie case of discrimination under the Pregnancy Discrimination Act is shown when: (a) The employee belongs to the protected class (*i.e.*, is or was pregnant); (b) The employee sought accommodation; (c) The employer did not accommodate the employee; and (d) The employer did accommodate others similar in their ability or inability to work. *Young v. United Parcel Serv., Inc.*, 135 S.Ct. 1338, 1354 (U.S. 2015). As with other Title VII claims, an employer can also violate the PDA with a workplace practice or policy that discriminates against pregnant employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

31. An employer violates the Pregnancy Discrimination Act when it accommodates similarly situated employees but fails to accommodate a pregnant employee. For example, an employer violates the PDA when the employer accommodated other employees with "light duty" work, yet discharged the

employee who requested light duty work due to pregnancy. *Luke v. Cplace Forest Park Snf, LLC*, 13-cv-00402-BAJ-EWD (M.D. La. Aug. 8, 2016).

32. The Pregnancy Discrimination Act applies to cases of discrimination that resulted in termination. *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 967 (5th Cir. 2016). The 6th Circuit has found that close timing between an employer's knowledge of the employee's pregnancy and the decision to terminate the employee creates a material issue of fact as to whether the termination was based on illegal discrimination. *Asmo v. Keane, Inc.*, 471 F.3d 588, 594-95 (6th Cir. 2006). The 5th Circuit has likewise acknowledged that temporal proximity between an employer's knowledge of the employee's protected class and the subsequent termination can be evidence of pretext in the termination decision. *Boyd v. State Farm Ins. Companies,* 158 F.3d 326, 330 (5th Cir.1998).

33. Ms. Blackledge was pregnant at the time of termination. When Ms. Blackledge informed her manager that she was pregnant, Defendants required Ms. Blackledge to get a doctor's note, and Ms. Blackledge promptly did so.

34. Ms. Blackledge requested accommodation due to her pregnancy, as directed by her doctor. She suggested to her employer that she could type in the bar codes of product, or open boxes to lift items one at a time instead of the entire box. Defendants refused to accommodate her, neither based on the accommodations she requested nor any others.

35. Defendants accommodated other non-pregnant employees with physical accommodation needs and did not terminate them.

36. Defendants supposed reason for terminating Ms. Blackledge was pretextual. Her pink slip indicated she was fired for failing to bring her doctor's note in a timely fashion.

37. By terminating Ms. Blackledge on the basis of her pregnancy, Defendants violated Ms. Blackledge rights under Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act.

**Count Two – Violation of Rights Under the Americans with Disabilities Act (All Defendants)**

38. Plaintiffs reallege and incorporate each and every foregoing paragraph.

39. A disability under the ADA is "an impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having a disability." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

40. Pregnancy itself is not a disability. See, e.g., *Gorman v. Wells Mfg. Corp.*, 209 F. Supp. 2d 970, 976 (S.D. Iowa 2002), *aff'd*, 340 F.3d 543 (8th Cir. 2003). In 2008, Congress amended the ADA to expand the definition of disability to ensure broad coverage, explicitly including temporary disabilities. Pub. L. No. 110-325, §§ 2(b)(5), 4(a), 122 Stat. 3553 (2008); 29 C.F.R. §§ 1630.1(c)(4), 1630.2(j)(1)(vi).

41. As a result, complications related to pregnancy that restrict everyday activities have been found to be disabilities under the expanded understanding of disability under the amended ADA. See, e.g., *McKellips v. Franciscan Health Sys.*, 2013 WL 1991103, at *4 (W.D. Wash. May 13, 2013), *Nayak v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 2013 WL 121838, at *3 (S.D. Ind. Jan. 9, 2013).

42. An employee with a disability is entitled to reasonable accommodations that do not constitute an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9.

43. Ms. Blackledge had a pregnancy more dangerous than a typical pregnancy. She had previously had two miscarriages, and therefore was restricted by her doctor to lifting items ten pounds or lighter. This restricted her typical daily activities.

44. Ms. Blackledge requested a reasonable accommodation from Defendants, and was denied the accommodation without explanation. The accommodations she sought were not an undue burden on Defendants.

45. When Defendants refused to accommodate Ms. Blackledge's pregnancy-related disability, they violated her employment rights under the Americans with Disabilities Act.

**Count Three – Violation of the Louisiana Pregnancy Discrimination Act**
**(All Defendants)**

46. Plaintiffs reallege and incorporate each and every foregoing paragraph.

47. Louisiana law forbids discrimination on the basis of pregnancy. La. R.S. 23:342. Claiming an employee was fired due to an insufficient doctor's note has been found to be a pretextual reason (and therefore discriminatory) for termination based on an employee's pregnancy. *Suire v. LCS Corr. Servs, Inc*., 930 So. 2d 221, 224 (La. App. 3 Cir. 2006).

48. Ms. Blackledge was pregnant at the time of termination. When Ms. Blackledge informed her manager that she was pregnant, Defendants required Ms. Blackledge to get a doctor's note verifying the pregnancy, and Ms. Blackledge promptly did so.

49. Ms. Blackledge requested accommodation. She suggested to Defendants that she could type in the bar codes of product, or open boxes to lift items one at a time instead of the entire box.

50. Defendants, without explanation, refused to accommodate her request.

51. She was terminated less than two weeks after her manager found out she was pregnant, on the pretextual basis of failing to produce an adequate doctor's note quickly enough.

52. Because of this Defendants violated her state law rights to be free of discrimination on the basis of pregnancy.

**Count Four – Breach of Lease Contract**
**(All Defendants)**

53. Plaintiffs reallege and incorporate each and every foregoing paragraph.

54. A landlord has a legal obligation to provide for peaceable possession of a leased property for the tenant during the duration of the lease. La. Civ. Code Ann. art. 2682(3).

55. In order to disrupt peaceable possession, a landlord must give proper notice of eviction: notice must be timely, written, and properly served. La. Civ. Code art. 2728; La. Code Civ. Proc. art. 4701-03. A notice to vacate must be delivered not less than five days prior to when the premises need to

be vacated if there is good cause for the eviction, such as failure to pay rent. La. Code Civ. Proc. art. 4701. *Tete v. Hardy*, 283 So.2d 252 (La. 1973). For a no-cause eviction under a month-to-month lease, 10 days notice is required prior to the end of the rental month. La. Civ. Code art. 2728. *Solet v. Brooks*, 30 So.3d 96, 101 (La. App. 1 Cir. 2009). The notice to vacate must include the cause for lease termination. La. Code Civ. Proc. art. 4731 (A).

56. A landlord may be liable if a wrongful eviction preceded the completion of a tenant's vacating the premises. *Mansur v. Cox*, 898 So.2d 446 (La. App. 1 Cir. 2004). *Pelleteri v. Caspian Grp. Inc*., 2002-2141 (La. App. 4 Cir. 7/2/03), 851 So. 2d 1230, 1237.

57. Wrongful eviction has been held to constitute a bad faith violation of an obligation that subjects a landlord to both foreseeable and unforeseeable damages. La. Civ. Code art. 1997; *Smith v. Shirley*, 815 So.2d 980 (La. App. 3 Cir. 2002) *writ denied* 816 So.2d 308 (La. 2002).

58. After deciding to terminate Ms. Blackledge on the basis of her pregnancy, Defendants sought to evict her and Mr. Patz as well. Defendants did not follow the necessary measures under Louisiana code to properly evict a tenant. For example, rather than giving them ten days to vacate for a no-cause eviction, Defendants gave them eight hours to vacate.

59. Defendants did not provide written notice of eviction. Instead, they provided verbal, unlawful notice by telling Ms. Blackledge and Mr. Patz they had eight hours to vacate.

60. Likewise, Defendants did not properly serve notice of eviction, as there was no written notice to serve.

61. Defendants breached their obligations under the lease when they wrongfully evicted Ms. Blackledge and Mr. Patz.

**Count Five – Trespass**
**(All Defendants)**

62. Plaintiffs reallege and incorporate each and every foregoing paragraph.

63. Failing to follow proper eviction procedures, and instead resorting to self-help to displace

a tenant, constitutes trespass. *Fo-Coin Co. v. Drury*, 349 So. 2d 382, 384 (La. Ct. App. 1977), *Waller & Edmonds v. Cockfield*, 111 La. 595, 35 So. 778 (1904); *Buchanan v. Daspit*, 245 So.2d 506 (La.App.3rd Cir. 1971).

64. However, a landlord may exercise self-help with regaining the property when a tenant abandons the property. *Weber v. McMillan*, 285 So. 2d 349, 351 (La. Ct. App. 1973). Abandonment requires both the physical act of abandoning the property as well as *a specific intent* to abandon. *Powell v. Cox*, 92 So.2d 739, 742 (La.App. 2nd Cir.1957).

65. Defendants failed to follow proper eviction procedures when they informed Plaintiffs they had “eight hours” to get out, and then threatened to call the police.

66. Plaintiffs did not abandon the property. They physically left the property only when they felt they had no choice, after being threatened by their landlord and former employer. Nor did they intend to abandon the property – they left because they believed they had to do so.

67. Defendants committed trespass when they unlawfully evicted Ms. Blackledge and Mr. Patz and then repossessed their apartment.

**Count Six – Violation of Rights Under Louisiana Unfair Trade Practices Act**
**(All Defendants)**

68. Plaintiffs reallege and incorporate each and every foregoing paragraph.

69. Unfair or deceptive acts in commerce are illegal under the Louisiana Unfair Trade Practices Act. LA RS 51:1401 *et seq.* Unlawful conduct under the statute includes conduct that involves “fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct.” *Tyler v. Rapid Cash, LLC*, 40,656 (La. App. 2 Cir. 5/17/06), 930 So. 2d 1135, 1140, quoting *A & W Sheet Metal, Inc. v. Berg Mechanical, Inc.*, 26,799 (La.App.2d Cir.4/5/95), 653 So.2d 158.

70. Self-help repossession without use of proper legal measures offends public policy and is unethical, constituting an unfair trade practice. *Id.* at 1141.

71. The Louisiana Unfair Trade Practices Act creates a private right of action for any person who

suffers a discernable loss of money or property based on an unfair trade practice. *Moore v. Goodyear Tire & Rubber Co.*, 364 So. 2d 630, 633 (La. Ct. App. 1978).

72. Knowingly engaging in unfair or deceptive practice subjects one to treble damages, as well attorney's fees and costs. La. R.S. 51:1409.

73. Defendants violated the Louisiana Unfair Trade Practices Act when they illegally evicted Plaintiffs.

**Count Seven - State Law Direct Action Claim**
**(ABC Insurance Companies 1-10)**

74. Plaintiffs reallege and incorporate each and every foregoing paragraph.

75. Defendant ABC Insurance Companies 1-10, upon information and belief, have issued and/or currently have in effect one or more policies of insurance covering one or more of the Defendants named herein. For valuable consideration received, these policies obligated Defendant ABC Insurance Companies 1-10, jointly and/or severally, to pay on behalf of their insured Defendant(s) any sums the insured Defendant(s) may become obligated to pay to Ms. Blackledge or to indemnify their insured Defendant(s) for any sums the insured Defendant(s) may become obligated to pay Ms. Blackledge.

76. By reason of their illegal acts, Defendants are liable to Plaintiffs for all damages and injuries Ms. Blackledge has suffered as a result. Upon information and belief, Defendant ABC Insurance Companies 1-10 are contractually obligated to pay these sums on behalf of the insured Defendant(s).

77. Upon information and belief, Defendant ABC Insurance Companies are liable to Plaintiffs for any and all damages incurred by reason of the insured Defendant(s)' acts, up to their policy limits, notwithstanding the fact that the insured Defendant(s) may themselves be able to assert claims of privilege or immunity from liability.

78. Under Louisiana Revised Statute § 22:655(B), Plaintiffs bring a direct action against Defendant ABC Insurance Companies 1-10 to recover any and all sums they are obligated to pay Plaintiffs on behalf of their insureds or to indemnify their insureds.

## V. RELIEF REQUESTED

79. Plaintiffs request a trial by jury.

80. Wherefore Plaintiffs request judgment be entered against Defendant and that the Court grant the following:

i. Declaratory relief;

ii. Judgment against Defendants for Plaintiffs' asserted causes of action;

iii. Award of compensatory damages;

iv. Award of treble damages under the Louisiana Unfair Trade Practices Act;

v. Award of special damages;

vi. Award costs and attorney's fees;

vii. Order such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted, this the fourteenth day of April, 2017,

VIVIAN BLACKLEDGE and MICHAEL PATZ, by and through their counsel,

/s/ William Most__________

WILLIAM MOST
La. Bar No. 36914
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
Email: williammost@gmail.com