UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIVIAN PATZ and MICHAEL PATZ, ) <br> ) <br>                   Plaintiffs, ) <br> v.                  ) <br> ) <br> WALTER H. MAPLES, INC., SHELLY )<br> JAMBON, SHH PROPERTIES, L.L.C., ) <br> ) <br>                   Defendants. ) | Civil Action No.: 2:17-cv-03465 <br><br> Judge Susie Morgan <br> Magistrate Janis van Meerveld |

## SECOND AMENDED COMPLAINT

Plaintiffs hereby file this Second Amended Complaint against the Defendants.

## INTRODUCTION

1. This is a case about Shelly Jambon firing and evicting her employees and tenants, Vivian and Michael Patz, because Vivian became pregnant.

2. Vivian Patz worked as a cashier and stocker for Sureway Supermarket in Grand Isle, Louisiana. She worked there for about a year, left, and then was rehired in January 2016 due to exemplary job performance. Her boyfriend Michael Patz ("Mike") also worked there, and the two of them and Vivian's young son lived in a small apartment rented to them by the store's owner and head manager, Shelly Jambon.

3. On April 11, 2016, a Sureway employee noticed that Vivian was not lifting a case of beer. The employee reported it to his sister Shelly Jambon. When Ms. Jambon asked Vivian why she wasn't lifting the case of beer, Vivian explained that she was pregnant. Ms. Jambon sent her home in the middle of the shift, and told her not to return without a doctor's note.

4. On April 16, 2016, Vivian returned to work with a doctor's note. The doctor's note stated that Vivian could return to work but "should not lift anything over 10 lbs."

5. Vivian was told she had to wait to return to work until Ms. Jambon, who was on vacation,

1

okayed it. While waiting to return to work, Vivian periodically contacted Sureway to check on the status of her job. Unbeknownst to Vivian, Defendants had already written up a pink slip for her the day before.

6.      On April 28, a manager came to Vivian and Mike's apartment to inform them that, per Ms. Jambon's orders, they were both evicted. When Vivian called Ms. Jambon to ask why, Ms. Jambon said, "if you can't lift over ten pounds, what do I need you for?" Vivian suggested ways she could still perform her job tasks without lifting over ten pounds. For example, she could type in the bar codes of heavy items rather than lifting those items onto the checkout conveyor belt. Or she could move items can by can, rather than a whole box at a time. Ms. Jambon said, "that's not going to work out."

7.      Ms. Jabmbon said that both Vivian and Mike were fired, and then told them they had eight hours to move out of their apartment. A Sureway manager – whose husband was the Assistant Chief of Police – threatened to call the police if Vivian and Mike did not vacate in the eight hours. So they quickly packed up their home and moved out.

8.      As a result, Vivian and Mike were jobless, homeless, and had a child on the way. They slept on the bathroom floor of a friend's place for a little while, and then had to live out of their car. They had to fish for food until they could scrape together enough money to afford gas to leave Grand Isle.

9.      The way Defendants treated Vivian and Mike is illegal.  Firing Vivian because of her pregnancy is barred by Title VII of the Civil Rights Act (as amended by the federal Pregnancy Discrimination Act) and the Louisiana Pregnancy Discrimination Act. The failure to make reasonable accommodations for Vivian's pregnancy-related medical complications violates the Americans with Disabilities Act. Evicting Vivian for getting pregnant violates the federal Fair Housing Act. And evicting Vivian and Mike on eight hours verbal notice violates Louisiana landlord-tenant law and the Louisiana Unfair Trade Practices Act.

10.     This civil action seeks compensatory, punitive, and other relief for Defendants' illegal termination and eviction of Vivian and Mike.

I.      **JURISDICTION AND VENUE**

11.     Plaintiffs' claims arise under the laws of the United States and Louisiana. This Court has jurisdiction over Plaintiffs' claims of federal rights violations, enforceable under Title VII of the Civil Rights Act as amended, the Americans with Disabilities Act, the Fair Housing Act, and the Residential Lead-Based Paint Hazard Reduction Act, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3). This Court has supplemental jurisdiction over Plaintiffs' Louisiana state law claims in accordance with 28 U.S.C. § 1367.

12.     The venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to the claim occurred in Jefferson Parish, Louisiana situated in the Eastern District of Louisiana.

II.     **THE PARTIES**

*Plaintiffs*

13.     Plaintiff **Vivian Patz** is of suitable age and capacity to file this suit. At all relevant times to this lawsuit, she was a resident of Jefferson Parish in the Eastern District of Louisiana. Since the filing of the initial Complaint (R. Doc. 1) she and Michael Patz married, and Vivian changed her last name from Blackledge to Patz.

14.     Plaintiff **Michael Patz** is of suitable age and capacity to file this suit. At all relevant times to this lawsuit, he was a resident of Jefferson Parish in the Eastern District of Louisiana.

*Defendants*

15.     Defendant **Shelly Jambon** is, on information and belief, the owner of Walter H. Maples, Inc. She served as landlord during the time of Vivian's employment and subsequent wrongful eviction based on her termination. On information and belief, she is domiciled in Jefferson Parish in the Eastern District of Louisiana. Ms. Jambon may have used the following names in the past: Shelly Maples, Shelly Landry, or Shelley Landry.

16.     Defendant **Walter H. Maples, Inc.** is an active business corporation in good standing in

Louisiana, and is the owner of the trade name and d/b/a Sureway Supermarket.

17. Defendant **SHH Properties, L.L.C.** is an active limited liability corporation in good standing in Louisiana. Its listed officers are Shelly Jambon, Harley Landry, and Holden Landry. SHH Properties, L.L.C. owned the property that Plaintiffs were unlawfully evicted from.

### III.   FACTS

18. Plaintiffs reallege and incorporate each and every foregoing paragraph.

19. Plaintiff Vivian Patz worked as a cashier and stocker for Sureway Supermarket in Grand Isle, Louisiana. She worked there for about a year and left on good terms. She was then was rehired in January 2016, because of her exemplary previous job performance. Her boyfriend Mike also worked at Sureway. Vivian, Mike, and Vivian's young son lived in an apartment owned by Defendants at 176 Nacarri Lane, Grand Isle.

20. The apartment building was built in 1973.

21. The Defendants did not give Vivian or Mike a lease to sign. On Vivian's first day of work, before Vivian was allowed to move in her belongings, Ms. Jambon had Vivian clean the apartment.

22. No defendant ever provided Vivian or Mike with a copy of an informational pamphlet regarding lead-based paint hazards.

23. Each pay period, Sureway took rent money out of Vivian's paycheck.

24. On April 11, 2016, a Sureway employee, Ms. Jambon's brother Beaver, noticed that Vivian was not lifting a case of beer. Beaver reported it to Shelly Jambon, the owner and head manager of Sureway.

25. When Ms. Jambon asked Vivian why she was not lifting the case of beer, Vivian explained that she was pregnant.

26. Ms. Jambon sent her home in the middle of the shift, and told her not to return to work without a doctor's note.

27. Ms. Jambon also made disparaging and disbelieving remarks about the high-risk nature of Vivian's pregnancy – stating that when Ms. Jambon was pregnant, she lifted twenty-five pounds, and did not see why Vivian could not do so as well.

28. Managers at Sureway had already known of Vivian's pregnancy – specifically, that it was high-risk, and she was unable to lift more than ten pounds. But it didn't become an issue until Ms. Jambon found out.

29. So Vivian did her best to get a doctor's note. On April 11th, 2016, Vivian went to the Lady of the Sea Emergency Room to get a doctor's note. She was told she had to go to a primary care physician.

30. The next day, April 12, 2016, at 1:30 p.m. Vivian called Sureway to keep them updated on her attempts to get a doctor's note.

31. On April 13, 2016, Vivian called Sureway twice – at 3:21 and 3:34 p.m. - to keep them updated on her attempts to get a doctor's note.

32. Vivian did not have a general physician at that time, as she was waiting for her Medicaid to begin. She called Medicaid to see if her application had been processed in case there was an ID number she could use prior to receiving her card.

33. Vivian went back to Sureway, and Manager Denise Esponge gave her $20 for gas money so that she could drive to a doctor's office.

34. On April 15, 2016, at 1:53 p.m., Vivian called Sureway.

35. Also on April 15, Defendants prepared a pink slip for Vivian, and purportedly sent it to the Louisiana Workforce Commission.

36. The pink slip says that it was submitted to the Louisiana Workforce Commission at 2:55 p.m. The Louisiana Workforce Commission, however, says they never received any pink slip for Vivian.

37. Vivian's pink slip said that Vivian was fired because she "has not brought doctor's note to be off and has not kept employer informed as of when or if she will be returning to work." (But Vivian had

never asked for any time off.)

38. Later on April 15, 2016, Vivian was able to meet with Dr. Herbert Muncie of St. Anne in Raceland, an hour and a half away from Grand Isle. Dr. Muncie noted that she had a complicated first pregnancy that ended in miscarriage at twelve weeks, and that she had cramping after lifting heavy objects.

39. Dr. Muncie wrote her a note that said she could return to work on April 18th and that she "should not lift anything over 10 lbs." *See* Figure 1, *infra.* Vivian brought the note back to Sureway Supermarket.

40. On April 16, 2016, Vivian brought her doctor's note to Sureway. Vivian was told that she could not return to work until Ms. Jambon said it was okay for her to return, even though Ms. Jambon was presently on vacation.



**Figure 1:** The doctor's note that Vivian brought to Ms. Jambon.

41. Vivian was eager to return to work so she could make money before having her baby. She therefore called Sureway periodically to check on whether she could return to work – and each time, was told Ms. Jambon had to personally approve her return.

42. For example, Vivian called Sureway several times on April 23, 2016.

43. On April 28, 2016, Mike was 30 minutes late to work. A manager (Mr. David Felarise) came to Vivian and Mike's apartment to tell them that he was told by Ms. Jambon to tell them to leave.

44. Vivian and Mike were not provided with an eviction notice.

45. Vivian called Ms. Jambon. Ms. Jambon said that both her and Mike were fired and said, "if you can't lift over ten pounds, what do I need you for?"

46. Vivian suggested ways she could still fulfill her job tasks without lifting over ten pounds. For example, she could scan heavy items in customer's grocery carts rather than lifting those items onto the checkout conveyor belt. Some heavy items, such as cases of water, already had their barcodes written down in the cash drawer so employees would not have to lift them. Or, Vivian suggested, she could move items can by can, rather than a whole box at a time.

47. Ms. Jambon said, "that's not going to work out."

48. Ms. Jambon told Vivian and Mike they had eight hours to move out of their apartment. When she unlawfully evicted them, she also told them that the apartment "better be spotless."

49. Vivian and Mike started packing, believing that they were required to move out. Sureway managers hassled them while they were packing. One manager, Denise Esponge, threatened to call the police if they weren't out in eight hours – a threat underscored by the fact that Denise's husband was the Assistant Chief of the Grand Isle Police Department.

50. Vivian and Mike moved out that day. They stayed with a friend for a little while, and then had to live out of their car for a time while they tried to piece their lives back together. Vivian's son went to stay with Vivian's mother.

51. First, Vivian and Mike shared a single mattress on the floor of a friend's bathroom for a month and a half. The bathroom was in a makeshift shack located under the friend's raised home, and they shared the shack with their friend's son, who slept in the bedroom.

52. Meanwhile, Mike and Vivian looked for new work, which was difficult on the small island of Grand Isle. The owner of a souvenir shop told Vivian that he would not hire her because he did not want to get on Ms. Jambon's bad side.

53. After they could no longer stay in their friend's basement, Vivian and Mike lived in their car. Vivian attempted to manage her pregnancy living in a car with limited access to food.

54. Sureway Supermarket is the only grocery store on the island. Mike was told he was not allowed on the property after having been fired, and Vivian was afraid to cross Ms. Jambon after her illegal termination and eviction. This, combined with their lack of income, resulted in difficulty finding food to eat. When they had money, they asked friends to purchase them food from Sureway. They caught fish when possible. At times, Mike and Vivian were lucky to eat even one meal a day. Their most consistent meal was ramen noodles.

55. Not having sufficient nutrients or calories severely affected Vivian's health during her already high-risk pregnancy. Suffering from hypoglycemia, she often fainted in the heat. Her health issues compounded and she lost a tooth to an abscess. Medical appointments during her pregnancy revealed protein issues in her urine, related to the lack of sufficient nutrients in her diet. She did not have these issues with protein during her first pregnancy, despite its complications.

56. Vivian also has a history of anemia. While employed, she was taking iron pills to healthfully manage her anemia during her pregnancy. After getting fired, Vivian could no longer afford iron pills. Combined with her inability to eat a healthy and varied diet, her anemia worsened during the course of her pregnancy. A few months after she was terminated and evicted, doctors found "decreased fetal movement," something that deeply scared Vivian.

57. Vivian also has a history of mental health struggles, including anxiety and post-partum depression. These issues were exacerbated due to getting fired.

58. After getting fired, Vivian struggled with her car payments. Vivian's parent informed her that people seeking to repossess the vehicle had been to their respective houses looking for Vivian.

59. Eventually, Vivian and Mike were forced to move off of Grand Isle. In order to get together gas money for the move, they sold everything they had of value – a fishing reel, the amplifier from their car, a pair of nice sunglasses, and so on. They were able to move into a trailer park in Covington, where they moved with just clothing and some knickknacks. Over a year later, they saved enough to purchase a bed.

60. In January 2017, Vivian timely filed a complaint with the Equal Employment Opportunity Commission regarding the discrimination she endured at Sureway.

61. On June 28, 2017, the EEOC mailed a Notice of Right to Sue to Vivian and her counsel. On July 1, 2017, counsel received the Notice.

62. Vivian and Mike found out that they were not the only ones to be treated this way by Defendants – Ms. Jambon has a pattern of firing employees who get pregnant while working for Sureway.

63. Victoria Spells, a former employee at Sureway (who also leased housing from Defendants), was fired in September 2015.

64. Ms. Spells was fired the day after she had her first doctor's visit for her pregnancy.

65. She was allegedly fired for "failing to make French bread."

66. When Ms. Spells asked the manager who passed along the message of her termination to check security camera footage, as she *had* baked bread that morning, the manager refused to do so.

67. Like Vivian, Ms. Spells was fired for getting pregnant, under a flimsy pretense.

68. Before Ms. Jambon was aware that Ms. Spells was pregnant, Ms. Spells told her coworkers

about her pregnancy. Her coworkers told her that it would not be long before Ms. Jambon fired her, as she had a pattern of firing pregnant women.

69. After Ms. Spells was fired for her pregnancy, she was given three days to vacate her apartment. Ms. Spells also was not allowed back at Sureway for some time, and, like Vivian and Mike, had to have friends shop for food on her behalf.

70. Other similarly-situated employees to Vivian and Ms. Spells were accommodated when they requested light work.

71. Ms. June, an older cashier, was not required to lift anything heavy. She did not have to stock shelves like other cashiers had to do on their "down time," and younger employees lifted heavy bags and boxes for her.

72. Denise Esponge, the same manager who both gave Vivian gas money to go to the doctor and harassed her while Vivian was hastily packing after her unlawful eviction, was also accommodated when she had a foot injury and could not perform her usual tasks.

## IV. CLAIMS FOR RELIEF

**Count One – Violation of Title VII of the Civil Rights Act and the Pregnancy Discrimination Act**
**(Vivian against Walter H. Maples, Inc.)**

73. Plaintiffs reallege and incorporate each and every foregoing paragraph.

74. Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act, bars an employer from discriminating against an employee on the basis of sex, including discrimination based on the employee's pregnancy. 42 U.S.C. § 2000e(k). A prima facie case of discrimination under the Pregnancy Discrimination Act is shown when: (a) The employee belongs to the protected class (*i.e.*, is or was pregnant); (b) The employee sought accommodation; (c) The employer did not accommodate the employee; and (d) The employer did accommodate others similar in their ability or inability to work. *Young v. United Parcel Serv., Inc.*, 135 S.Ct. 1338, 1354 (U.S. 2015). As with other Title VII claims, an employer can also violate the PDA with a workplace practice or policy that discriminates against

10

pregnant employees. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

75. An employer violates the Pregnancy Discrimination Act when it accommodates similarly situated employees but fails to accommodate a pregnant employee. For example, an employer violates the PDA when the employer accommodated other employees with "light duty" work, yet discharged the employee who requested light duty work due to pregnancy. *Luke v. Cplace Forest Park Snf, LLC*, 13-cv-00402-BAJ-EWD (M.D. La. Aug. 8, 2016).

76. The Pregnancy Discrimination Act applies to cases of discrimination that resulted in termination. *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 967 (5th Cir. 2016). Close timing between an employer's knowledge of the employee's pregnancy and the decision to terminate the employee creates a material issue of fact as to whether the termination was based on illegal discrimination. *Asmo v. Keane, Inc.*, 471 F.3d 588, 594-95 (6th Cir. 2006). The 5th Circuit has likewise acknowledged that temporal proximity between an employer's knowledge of the employee's protected class and the subsequent termination can be evidence of pretext in the termination decision. *Boyd v. State Farm Ins. Companies,* 158 F.3d 326, 330 (5th Cir.1998).

77. Vivian was pregnant at the time of termination. When Vivian informed her manager that she was pregnant, Defendants required Vivian to get a doctor's note, and Vivian promptly did so.

78. Vivian requested accommodation due to her pregnancy, as directed by her doctor. She suggested to her employer that she could type in the bar codes of product, or open boxes to lift items one at a time instead of the entire box. Defendants refused to accommodate her, neither based on the accommodations she requested nor any others.

79. Defendants accommodated other non-pregnant employees with physical accommodation needs and did not terminate them.

80. Defendants supposed reason for terminating Vivian was pretextual. Her pink slip indicated she

was fired for failing to bring her doctor's note in a timely fashion.

81. By terminating Vivian on the basis of her pregnancy, Defendant Walter H. Maples, Inc. violated Vivian's rights under Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act.

### Count Two – Violation of Rights Under the Americans with Disabilities Act
### (Vivian against Shelly Jambon and Walter H. Maples, Inc.)

82. Plaintiffs reallege and incorporate each and every foregoing paragraph.

83. A disability under the ADA is "an impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having a disability." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).

84. Pregnancy itself is not a disability. *See, e.g., Gorman v. Wells Mfg. Corp.*, 209 F. Supp. 2d 970, 976 (S.D. Iowa 2002), *aff'd,* 340 F.3d 543 (8th Cir. 2003). In 2008, Congress amended the ADA to expand the definition of disability to ensure broad coverage, explicitly including temporary disabilities. Pub. L. No. 110-325, §§ 2(b)(5), 4(a), 122 Stat. 3553 (2008); 29 C.F.R. §§ 1630.1(c)(4), 1630.2(j)(1)(vi).

85. As a result, complications related to pregnancy that restrict everyday activities have been found to be disabilities under the expanded understanding of disability under the amended ADA. See*, e.g., McKellips v. Franciscan Health Sys.*, 2013 WL 1991103, at *4 (W.D. Wash. May 13, 2013), *Nayak v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 2013 WL 121838, at *3 (S.D. Ind. Jan. 9, 2013).

86. An employee with a disability is entitled to reasonable accommodations that do not constitute an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9.

87. Vivian had a pregnancy more dangerous than a typical pregnancy. She had previously had two miscarriages, and therefore was restricted by her doctor to lifting items ten pounds or lighter. This restricted her typical daily activities.

88. Vivian requested a reasonable accommodation from Defendants, and was denied the

accommodation without explanation. The accommodations she sought were not an undue burden on Defendants.

89.  When Defendants refused to accommodate Vivian's pregnancy-related disability, they violated her employment rights under the Americans with Disabilities Act.

### Count Three – Violation of Rights Under the Fair Housing Act
### (Vivian and Mike against All Defendants)

90.  Plaintiffs reallege and incorporate each and every foregoing paragraph.

91.  A landlord cannot "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, *or otherwise make unavailable or deny*, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a) (emphasis added).  Familial status includes a person who is pregnant. 42 U.S.C. § 3602(k).

92.   To create a prima facie case of discrimination under the FHA, a plaintiff must show either intentional discrimination or disparate impact. Burden of showing a non-discriminatory explanation then shifts to the defendant. *Scruggs v. Marshall Hous. Auth.,* 232 F.3d 210 (5th Cir. 2000) (per curium) (unpublished). The protected class status does not need to be the sole motivating factor in the illegal action, just one of the effective reasons. *Id.*

93.  Here, all Defendants were involved in the provision of housing to Plaintiffs. According to Defendants, "Vivian occupied a unit in employer housing provided by Sureway as part of her employment." They describe it as "employ[er] provided housing." Vivian and Mike's rent was deducted from their paycheck from Walter H. Maples, Inc. The lease contract was an oral agreement made by Vivian and Mike with Shelly. SHH Properties, L.L.C. owned the apartment. Collectively, Shelly, Walter H. Maples, Inc., and SHH Properties, L.L.C. acted as Plaintiffs' landlord.

94.  Vivian was a member of a protected class as a pregnant woman. She met the minimum standards to rent from Defendants. Vivian and Mike were evicted immediately after Defendants learned of Vivian's pregnancy. They evicted her because of her pregnancy. Other tenants, similarly

situated but for pregnancy, were not evicted.

95. Shelley Jambon actively committed discriminatory acts and was personally involved in the illegal eviction of Plaintiffs. She unlawfully disrupted Vivian and Mike's peaceable possession by instructing one of her managers to evict Plaintiffs, telling them they had eight hours to get out, and telling them the place had better be "spotless." She evicted them as a direct result of Vivian's pregnancy (saying, "If you can't lift over ten pounds, what do I need you for?").

96. Failure to comply with the Fair Housing Act opens a landlord up to actual and punitive damages, as well as attorney's fees. 42 U.S.C. § 3613(c).

### Count Four – Breach Of Residential Lead-Based Paint Hazard Reduction Act
### (Vivian and Mike against All Defendants)

97. Plaintiffs reallege and incorporate each and every foregoing paragraph.

98. A lessor and property owner has a legal obligation to provide a lessee with an informational pamphlet regarding lead hazards, promulgated by the Environmental Protection Agency, *prior* to the lessee's obligation under contract to lease the property. 42 U.S.C. 4852d. Additionally, if the lessor contracts with a rental agent, the agent is required to ensure compliance with this regulation. 42 U.S.C. 4852d(a)(4).

99. Knowing failure to comply with the Residential Lead-Based Paint Hazard Reduction Act subjects one to joint and several liability to the lessee for treble damages, attorney's fees, and expert witness fees, or up to a $10,000 civil liability. 42 U.S.C. 4852d(b)(4), (f)(2).

100. The RLPHRA was enacted to eliminate lead-based paint hazards in homes, and educate the public on the hazards of lead. *Kaye v. Acme Investments, Inc.,* No. 08-12570, 2008 WL 5188712, at *3 (E.D. Mich. Dec. 8, 2008). To demonstrate a violation of the act, "a plaintiff must show that (1) he was a lessee, (2) defendant was a lessor who failed to make the proper disclosures under 40 C.F.R. § 745.107, "(3) the leased property was target housing, and (4) the lease contract was signed after" the "regulatory effective dates."" *Id*., quoting *Sipes ex rel. Slaughter v. Russell,* 89 F.Supp.2d 1199, 1202–1203

14

(D.Kan.2000). Target housing is property built before 1978. *Id.*

101.  Lead can cause, among other things: fertility problems, high blood pressure, digestive problems, nerve disorder, memory and concentration problems, and muscle and joint pain. Adults can inadvertently ingest lead by breathing in lead dust or swallowing lead dust that has landed on food preparation surfaces. This is particularly likely during activities that disturb painted surfaces, such as renovations and repairs. *See* https://www.epa.gov/sites/production/files/2013-09/documents/lead_in_your_home_brochure_land_color_508.pdf.

102.  Defendants failed to notify Vivian or Mike of the potential hazards of lead in the leased pre-1978 property.

103.  Neither Vivian or Mike were informed of the potential of lead poisoning in the leased property.

104.  Vivian and Mike were lessees at 176 Nacarri Lane, Grand Isle, Louisiana.

105.  Defendants were the lessor.

106.  The structure at 176 Nacarri Lane was built prior to 1978.

107.  According to the Jefferson Parish Assessor's Office, the structure was built in 1973.

108.  Vivian and Mike moved into the property after the statute had taken effect.

109.  When Defendants knowingly failed to provide Vivian and Mike with the EPA-issued lead hazard informational pamphlet, they violated the Residential Lead-Based Paint Hazard Reduction Act.

**Count Five – Violation of the Louisiana Pregnancy Discrimination Act**
**(Vivian against Shelly Jambon and Walter H. Maples, Inc.)**

110.  Plaintiffs reallege and incorporate each and every foregoing paragraph.

111.  Louisiana law forbids discrimination on the basis of pregnancy. La. R.S. 23:342. Claiming an employee was fired due to an insufficient doctor's note has been found to be a pretextual reason (and therefore discriminatory) for termination based on an employee's pregnancy. *Suire v. LCS Corr. Servs, Inc.*, 930 So. 2d 221, 224 (La. App. 3 Cir. 2006).

112.  Vivian was pregnant at the time of termination. When Vivian informed her manager that she

was pregnant, Defendants required Vivian to get a doctor's note verifying the pregnancy, and Vivian promptly did so.

113. Vivian requested accommodation. She suggested to Defendants that she could type in the bar codes of product, or open boxes to lift items one at a time instead of the entire box.

114. Defendants, without explanation, refused to accommodate her request.

115. She was terminated less than two weeks after her manager found out she was pregnant, on the pretextual basis of failing to produce a doctor's note quickly enough. She was also illegally evicted.

116. Because of this, Defendants violated Vivian's state law rights to be free of discrimination on the basis of pregnancy.

### Count Six – Breach of Lease Contract
### (Vivian and Mike against All Defendants)

117. Plaintiffs reallege and incorporate each and every foregoing paragraph.

118. A landlord has a legal obligation to provide for peaceable possession of a leased property for the tenant during the duration of the lease. La. Civ. Code Ann. art. 2682(3).

119. In order to disrupt peaceable possession, a landlord must give proper notice of eviction: notice must be timely, written, and properly served. La. Civ. Code art. 2728; La. Code Civ. Proc. art. 4701-03. A notice to vacate must be delivered not less than five days prior to when the premises need to be vacated if there is good cause for the eviction, such as failure to pay rent. La. Code Civ. Proc. art. 4701; *Tete v. Hardy*, 283 So.2d 252 (La. 1973). For a no-cause eviction under a month-to-month lease, 10 days notice is required prior to the end of the rental month. La. Civ. Code art. 2728; *Solet v. Brooks*, 30 So.3d 96, 101 (La. App. 1 Cir. 2009). The notice to vacate must include the cause for lease termination. La. Code Civ. Proc. art. 4731 (A).

120. A landlord may be liable if a wrongful eviction preceded the completion of a tenant's vacating the premises. *Mansur v. Cox*, 898 So.2d 446 (La. App. 1 Cir. 2004); *Pelleteri v. Caspian Grp. Inc.*, 2002-2141 (La. App. 4 Cir. 7/2/03), 851 So. 2d 1230, 1237.

121. Wrongful eviction has been held to constitute a bad faith violation of an obligation that subjects a landlord to both foreseeable and unforeseeable damages. La. Civ. Code art. 1997; *Smith v. Shirley*, 815 So.2d 980 (La. App. 3 Cir. 2002) *writ denied* 816 So.2d 308 (La. 2002).

122. After deciding to terminate Vivian on the basis of her pregnancy, Defendants sought to evict her and Mike as well. Defendants did not follow the necessary measures under Louisiana code to properly evict a tenant. For example, rather than giving them ten days to vacate for a no-cause eviction, Defendants gave them eight hours to vacate.

123. Defendants did not provide written notice of eviction. Instead, they provided verbal, unlawful notice by telling Vivian and Mike they had eight hours to vacate.

124. Likewise, Defendants did not properly serve notice of eviction, as there was no written notice to serve.

125. Defendants breached their obligations under the lease when they wrongfully evicted Vivian and Mike.

### Count Seven – Trespass
### (Vivian and Mike against All Defendants)

126. Plaintiffs reallege and incorporate each and every foregoing paragraph.

127. Failing to follow proper eviction procedures, and instead resorting to self-help to displace a tenant, constitutes trespass. *Fo-Coin Co. v. Drury*, 349 So. 2d 382, 384 (La. Ct. App. 1977); *Waller & Edmonds v. Cockfield*, 111 La. 595, 35 So. 778 (1904); *Buchanan v. Daspit*, 245 So.2d 506 (La.App.3rd Cir. 1971).

128. However, a landlord may exercise self-help with regaining the property when a tenant abandons the property. *Weber v. McMillan*, 285 So. 2d 349, 351 (La. Ct. App. 1973). Abandonment requires both the physical act of abandoning the property as well as *a specific intent* to abandon. *Powell v. Cox,* 92 So.2d 739, 742 (La.App. 2nd Cir.1957).

129. Defendants failed to follow proper eviction procedures when they informed Plaintiffs they had

"eight hours" to get out, and then threatened to call the police.

130. Plaintiffs did not abandon the property. They physically left the property only when they felt they had no choice, after being threatened by their landlord and former employer. Nor did they intend to abandon the property – they left because they believed they had to do so.

131. Defendants committed trespass when they unlawfully evicted Vivian and Mike and then repossessed their apartment.

### Count Eight – Violation of Rights Under Louisiana Unfair Trade Practices Act
### (Vivian and Mike against All Defendants)

132. Plaintiffs reallege and incorporate each and every foregoing paragraph.

133. Unfair or deceptive acts in commerce are illegal under the Louisiana Unfair Trade Practices Act. LA RS 51:1401 *et seq.* Unlawful conduct under the statute includes conduct that involves "fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct." *Tyler v. Rapid Cash, LLC*, 40,656 (La. App. 2 Cir. 5/17/06), 930 So. 2d 1135, 1140, quoting *A & W Sheet Metal, Inc. v. Berg Mechanical, Inc.,* 26,799 (La.App.2d Cir.4/5/95), 653 So.2d 158.

134. Self-help repossession without use of proper legal measures offends public policy and is unethical, constituting an unfair trade practice. *Id.* at 1141.

135. The Louisiana Unfair Trade Practices Act creates a private right of action for any person who suffers a discernable loss of money or property based on an unfair trade practice. *Moore v. Goodyear Tire & Rubber Co.,* 364 So. 2d 630, 633 (La. Ct. App. 1978).

136. Defendants violated the Louisiana Unfair Trade Practices Act when they fired a pregnant woman with a medically-sensitive pregnancy, refused to accommodate her disability, illegally evicted her and her boyfriend (knowing that employment and housing is extremely difficult to find on Grand Isle), used threats of involving law enforcement, and barred them from the only grocery store in Grand Isle.

137. Defendants violated LUPTA when they deceived Vivian into believing she could keep her job if

she obtained a doctor's note. Defendants' never intended to let Vivian keep her job, because as Shelly said – if Vivian could not lift over ten pounds, what did they need her for?

138. If Defendants submitted Vivian's pink slip to the Louisiana Workforce Commission, they violated LUPTA by submitting a pink slip that said Vivian "has not brought doctor's note to be off and has not kept employer informed as of when or if she will be returning to work." That pink slip constituted a deceptive practice because Vivian never asked "to be off" nor was she in control of when she could return to work.

139. If Defendants did *not* submit the pink slip to the Louisiana Workforce Commission, they violated LUPTA by creating a falsified pink slip that said it was submitted to the LWC when it was not.

## V. RELIEF REQUESTED

140. Plaintiffs request a trial by jury.

141. Wherefore Plaintiffs request judgment be entered against Defendant and that the Court grant the following:

   i. Declaratory relief;
  ii. Judgment against Defendants for Plaintiffs' asserted causes of action;
 iii. Award of compensatory damages;
  iv. Award of special damages;
   v. Award of punitive damages;
  vi. Award costs and attorney's fees;
 vii. Order such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

    Respectfully submitted,

    VIVIAN PATZ and MICHAEL PATZ, by and through their counsel,

    /s/ William Most_____
    WILLIAM MOST
    La. Bar No. 36914
    201 St. Charles Ave., Ste. 114, # 101
    New Orleans, LA 70170
    T: (504) 509-5023
    Email: williammost@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2018, a copy of the *Second Amended Complaint* was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

    */s/William Most*
    William Most