UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VIVIAN PATZ and MICHAEL PATZ** ) | **CIVIL ACTION NO. 2:17-cv-03465** |
| ) | |
| **Plaintiffs** ) | |
| ) | **SECTION "E" (1)** |
| **Vs.** ) | |
| ) | |
| **SUREWAY SUPERMARKET, WALTER H.** ) | **JUDGE SUSIE MORGAN** |
| **MAPLES, INC., SHELLY JAMBON, DOES** ) | |
| **1-10, ABC INSURANCE COMPANIES 1-10** ) | **MAGISTRATE JANIS van MEERVELD** |
| ) | |
| **Defendants** ) | |

MEMORANDUM IN SUPPORT OF
SHELLY JAMBON'S MOTION FOR SUMMARY JUDGMENT

Defendant, Shelly Jambon ("Jambon") files this memorandum in support of her Motion for Summary Judgment under Federal Rule of Civil Procedure 56, showing in support as follows:

I.    Introduction

Plaintiffs, Vivian and Michael Patz, filed suit against Jambon and others, claiming that Jambon violated their rights under Title VII of the Civil Rights Act as amended by the Pregnancy Discrimination Act, the Americans with Disabilities Act, the Fair Housing Act, the Residential Lead-Based Paint Hazard Reduction Act, and state law claims for breach of lease contract through disruption of peaceable possession and wrongful eviction, trespass, and violation of Louisiana's Unfair Trade Practices Act.

Plaintiffs were employed by Walter H. Maples, Inc.[1] Walter H. Maples, Inc., does business

---

[1]    See ¶2 Second Amended Complaint.

using the trade name, "Sureway Supermarket."[2] Jambon is a shareholder of Walter H. Maples, Inc.[3] Plaintiffs were not employed by Jambon individually; Jambon did not personally receive services from Plaintiffs; and Jambon did not personally compensate plaintiffs for services.[4]

As a benefit of their employment, Plaintiffs lived in employer-provided housing.[5] The housing, located at 176 Naccari Lane, Grand Isle, Louisiana, is owed by SHH Properties, L.L.C.[6] Jambon is the member of this Louisiana limited liability company.[7] Jambon does not personally own the land or building located at 176 Naccari Lane, Grand Isle, Louisiana.[8]

## II.   LEGAL STANDARDS

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial*

---

[2] See Exhibit 1, ¶ 3, Affidavit of Shelly Jambon and Report of Secretary of State indicating trade name details of Sureway Supermarket attached thereto as Exhibit 3.

[3] See Exhibit 1, ¶ 2, Affidavit of Shelly Jambon and Exhibit 2, and Report of Secretary of State for Walter H. Maples, Inc. attached thereto as Exhibit 2.

[4] See Exhibit 1, ¶¶ 7, 8, & 9, Affidavit of Shelly Jambon.

[5] See ¶¶ 2 & 19 of Second Amended Complaint.

[6] See Exhibit 1, ¶5, Affidavit of Shelly Jambon and Cash Sale registered in the records of Jefferson Parish at CIN 10809533 attached thereto as Exhibit 5.

[7] See Exhibit 1, ¶4, Affidavit of Shelly Jambon and Report of Secretary of State for SHH Properties, LLC attached thereto as Exhibit 4.

[8] See Exhibit 1, ¶5, Affidavit of Shelly Jambon and Cash Sale registered in the records of Jefferson Parish at CIN 10809533 attached thereto as Exhibit 5.

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed.R.Civ.P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id*.

III.  LAW AND ARGUMENT

*Title VII of the Civil Rights Act as amended by the Pregnancy Discrimination Act and Americans with Disabilities Act/LEDL State-Law Clams*

To the extent Plaintiffs assert their Title VII claims and their ADA claims against Shelly Jambon in either her individual or official capacity, it is clear that Plaintiffs' claims must be dismissed pursuant to Rule 56. Despite the reference in the statute defining the term employer to include any agent of the employer, the Fifth Circuit has held that Title VII does not impose individual liability. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999).

Further, the Fifth Circuit has held that "a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity." *Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999).

It is clear that individuals who do not otherwise qualify as "employers," as a sole proprietor would, cannot be held individually liable under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.1994). As the "ADA's definition of 'employer' mirrors the definitions of 'employer'" in Title VII, "individuals who do not meet the statutory definition of 'employer' cannot be held liable in their individual capacities under the employment provisions of the ADA." *Kacher v. Houston Naccari College System,* 974 F.Supp. 615, 618 (S.D.Tex.1997).

"Individuals who do not otherwise meet the statutory definition of 'employer' cannot be liable under the ADA." *U.S. EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1282 (7th Cir.1995). Because "the definition of 'employer' in the Disabilities Act is like the definitions in Title VII" and the ADEA, "there is no sound reason to read the Disabilities Act any differently from this Court's reading of Title VII and the Age Discrimination Act." *Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996); *Starkman v. Evans*, 18 F.Supp.2d 630 (EDLA, 1998).

Plaintiffs were employed by Walter H. Maples, Inc., d/b/a Sureway Supermarket.[9] Walter H. Maples, Inc., is a corporation. Shelly Jambon is a shareholder and officer of Walter H. Maples, Inc.[10] As such, she is not personally liable for the acts or debts of the corporation. See LSA-R.S.

---

[9] See ¶¶ 2 and 19 Second Amended Complaint.

[10] See Exhibit 1, ¶ 2, Affidavit of Shelly Jambon and Exhibit 2, and Report of Secretary of State for Walter H. Maples, Inc. attached thereto as Exhibit 2.

12:1-622. See also *Automatic Coin Enter., Inc. v. Vend–Tronics, Inc.*, 433 So.2d 766 (La.App. 5 Cir.1983).

As a result, Plaintiffs' Title VII claims against Jambon in her individual and official capacities must be dismissed.

Insofar as the claims for a violation of the Louisiana Employment Discrimination Law (LEDL) for terminating Plaintiffs on alleged basis of Vivian Patz's pregnancy, these too should be dismissed. Under Louisiana law, only "employers" are liable for violations of the LEDL.

The following definitions in LSA–RS. 23:302 are applicable to R.R. 23:342:

(1) "Employee" means an individual employed by an employer.

( 2) "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state *receiving services from an employee and, in return, giving compensation of any kind to an employee*. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. "Employer" shall also include an insurer, as defined in R.S. 22:46, with respect to appointment of agents, regardless of the character of the agent's employment.

The legislature assigned a specific definition for "employer" for purposes of this discrimination statute. In determining whether an employer provides compensation to an employee, Louisiana courts have considered such factors as: who paid the employee's wages; who withheld federal, state, unemployment, or social security taxes; whether the employee's name appeared on the employer's payroll; and whether the employee participated in the employer's benefit plans. See *Duplessis v. Warren Petroleum, Inc.*, 95–1794 (La.App. 4 Cir. 3/27/96), 672 So.2d 1019, 1023; *Onyeanusi v. Times–Picayune Publishing Corporation*, 485 So.2d 622, 623 (La.App. 4 Cir.1986).

The critical language of LSA–R.S. 23:302(2) is the phrase "receiving services from an

employee and, in return, giving compensation of any kind to an employee."

In the case *subjudice*, Plaintiffs were employed by Walter H. Maples, Inc., d/b/a Sureway Supermarket.[11] The Plaintiffs performed services for Walter H. Maples, Inc., d/b/a Sureway Supermarket, for which they received compensation from Walter H. Maples, Inc., d/b/a Sureway Supermarket. Plaintiffs were not employed by Jambon individually.[12] They did not perform services for Jambon individually for which they received any compensation from Jambon individually.[13] Thus, for purposes of LSA–R.S. 23:341, *et seq.*, Jambon is not the employer of the Plaintiffs; therefore, Jambon cannot be held liable for any violation of LSA–R.S. 23:341, *et seq.*

All state law claims of employment discrimination against Shelly Jambon must be dismissed.

*Fair Housing*

The Fair Housing Act forbids discrimination based upon the familial status of a person in respect to the sale or rental of a dwelling. 42 U.S.C. §§ 3604(a). Familial status includes a person who is pregnant. 42 U.S.C. § 3602(k).

The Act imposes liability without fault upon the employer of an agent or employee in accordance with traditional agency principles, *i.e.,* it normally imposes vicarious liability upon the corporation but not upon its officers or owners. Traditional vicarious liability rules ordinarily make principals or employers vicariously liable for the acts of their agents or employees in the scope of their authority or employment. *E.g., Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 756, 118 S.Ct. 2257, 141 L.Ed.2d 633. Absent special circumstances, it is the corporation, not its owner,

---

[11] See ¶¶ 2 and 19 Second Amended Complaint.

[12] See ¶¶ 2 and 19 Second Amended Complaint.

[13] See Exhibit 1, ¶¶ 7, 8, & 9, Affidavit of Shelly Jambon.

officer, or shareholder, who is the principal or employer subject to vicarious liability for the torts of its employees or agents. *Meyer v. Holley*, 537 U.S. 280 (2003) 123 S.Ct. 824, 154 L.Ed.2d 753.

SHH Properties, L.L.C., is the owner of the property in which Plaintiffs resided as a perq of their employment with Walter H. Maples, Inc.[14] Jambon is a member of the limited liability company (LLC).[15] An LLC is an entity to which the law attributes personality and is, therefore, a juridical person. See La. R.S. 12:130. Therefore, as a general proposition, the law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons. See La. C.C. art. 24. See also, *Ogea v. Travis Merritt*, 2013–1085, p. 6 (La.12/10/13), —–So.3d —–; *Charming Charlie, Inc., v. Perkins Rowe Associates, L.L.C.*, 2011–2254, p. 5 (La.App. 1st Cir.7/10/12), 97 So.3d 595, 598.

Furthermore, LSA-R.S. 12:1320 provides that "no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company."

In ¶ 93 of their Second Amended Complaint, plaintiffs allege that "Collectively, Shelly, Walter H. Maples, Inc., and SHH Properties, L.L.C. acted as Plaintiffs' landlord." Such statement is conclusory and not based in fact or law. Obviously, a juridical person, like a corporation or a limited liability company, can only act through its officers, members, agents or employees.

It is with these legal principles in mind that the court should address the question of whether the motion for summary judgment should be granted in favor of Ms. Jambon. Ms. Jambon is a

---

[14] See ¶¶ 2, 17, and 19 Second Amended Complaint.

[15] See Exhibit 1, ¶4, Affidavit of Shelly Jambon and Report of Secretary of State for SHH Properties, LLC attached thereto as Exhibit 4.

separate and distinct legal entity from SHH Properties, LLC. There is no evidence to support plaintiffs' contention that any of Jambon's acts or omissions were done in her individual capacity as opposed to her capacity as a member of SHH Properties, LLC or as the president and/or shareholder of Walter F. Maples, Inc. Additionally, there is no evidence that any of Jambon's alleged actions in this case rose to the level of fraud, malfeasance or criminal wrongdoing such that the imposition of individual liability on Jambon would be warranted.

Shelly Jambon is not vicariously liable for any alleged discrimination against Plaintiffs under the Fair Housing Act by any employee or agent of SHH Properties, L.L.C., the owner of 176 Naccari Lane, and any claim against Jambon in this capacity must be dismissed.

Furthermore, Shelly Jambon did not commit any act of discrimination or act violative of the Fair Housing Act on her individual capacity. Any action taken by Jambon was in her capacity as member of SHH Properties, LLC, or president of Maples.

*Breach of Contract/Wrongful Eviction/Trespass*

Assuming, *arguendo*, that the plaintiffs were wrongfully evicted from the property located at 176 Naccari Lane, an assertion that Jambon vehemently denies, Plaintiffs do not have a cause of action for such action against Shelly Jambon individually.

First and foremost, there is no contract between Plaintiffs and Shelly Jambon directly. Jambon does not own the property at which Plaintiffs resided during their employment stint with Walter H. Maples, Inc. Therefore, there is no contract of lease, oral or written, between Plaintiffs and Jambon.[16]  If there is no contract, then there can be no breach.

Second, under the provisions of La. C.C. art. 2682, a *lessor* is bound from the very nature of

---

[16]     See Exhibit 1, ¶10, Affidavit of Shelly Jambon

the contract, and without any clause to that effect to do three things. One of those things is "[t]o protect the lessee's peaceful possession for the duration of the lease." La. C.C. art. 2682(3); *See also Girgis v. Macaluso Realty Co., Inc.,* 00–753, p. 4 (La.App. 4 Cir. 1/31/01), 778 So.2d 1210, 1212. A *lessor* who fails to meet his or her obligations under the provisions of La. C.C. art. 2682 by wrongfully dispossessing the lessee of the premises may be liable for any resulting damages. *Id.* The duty belongs to the lessor under the law; therefore, any damages arising from the breach of that duty by the lessor would be the responsibility of the lessor.

Once again, the property in question is owned by SHH Properties, L.L.C.[17] SHH Properties, LLC is the lessor. Jambon is not the lessor; therefore, Jambon cannot be personally liable for any damages resulting from any alleged wrongful eviction.

See also discussion on limited liability of shareholders, officers and directors of corporations and/or members and managers of limited liability companies, *supra*.

### *Unfair Trade*

Pursuant to LUTPA, it is unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. La. R.S. 51:1405(A). Acts constituting unfair or deceptive trade practices are not specifically defined but are determined on a case-by-case basis. La. Rev. Stat. Ann. § 51:1405(A) . *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 14–0323, p. 9 (La.App. 4 Cir. 10/1/14), 151 So.3d 670. Jurisprudence has defined an "unfair trade practice" as one that is "unethical, oppressive, unscrupulous, or substantially injurious." *Balthazar v. Hensley R. Lee Contracting, Inc.*, 214 So.3d 1032 (2017) 2016-0920 (La.App. 4 Cir.

---

[17] See Exhibit 1, ¶5, Affidavit of Shelly Jambon and Cash Sale registered in the records of Jefferson Parish at CIN 10809533 attached thereto as Exhibit 5.

3/15/17); *Bolanos v. Madary*, 609 So.2d 972, 977 (La. App. 4th Cir. 1992). Acts which generally constitute unfair trade practices involve fraud, deception, misrepresentation, breach of fiduciary duty, or other unethical conduct. *Action Revenue Recovery, L.L.C., v. eBusiness Group, L.L.C.*, 44,607, p. 9 (La.App. 2 Cir. 8/19/09), 17 So.3d 999. A critical factor in such cases is the defendant's motivation, and the actions must have been taken for the purposes of harming the competition. *Monroe Surgical Hosp., LLC v. St. Francis Med. Ctr., Inc.*, 49,600, 49,608, p. 29 (La.App. 2 Cir. 8/21/14), 147 So.3d 1234, 1250, *writ denied*, 14–1991 (La. 11/21/14), 160 So.3d 975.

In LUTPA, the legislature declared it to be unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La.Rev.Stat. § 51: 1405. Because of the broad sweep of this language, "Louisiana courts determine what is a LUTPA violation on a case-by-case basis." Keith E. Andrews, Comment, Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law, 41 Loy. L.Rev. 759, 762 (1996) (hereinafter "Andrews"). The Louisiana Supreme Court has consistently held that in establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09–1633, p. 11 (La.4/23/10), 35 So.3d 1053, 1059. "[T]he range of prohibited practices under LUTPA is extremely narrow," as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence. *Id*. at 11, 35 So.3d at 1059; Andrews, 41 Loy. L.Rev. at 763. Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA. See, e.g., *Cheramie Services*, 09–1633 at 12, 35 So.3d at 1060 ("[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical

conduct will be sanctioned based on LUTPA."); *Vermilion Hosp., Inc. v. Patout*, 05–82, p. 6 (La.App. 3 Cir. 6/8/05), 906 So.2d 688, 693 (noting that not all violations of the Louisiana Code of Ethics give rise to a cause of action under LUTPA and that persons aggrieved by such violations of the code of ethics are permitted to file a complaint with the Louisiana Board of Ethics or seek remedies under other statutes).

LUTPA was modeled after the Federal Trade Commission Act (hereinafter "FTC Act"), and the two acts share the same goals: to protect consumers and to foster competition. See Andrews, 41 Loy. L.Rev. at 777. Specifically, these goals include halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry. See, e.g., *Slough v. Fed. Trade Comm'n*, 396 F.2d 870 (5th Cir.1968), *cert. denied*, 393 U.S. 980, 89 S.Ct. 448, 21 L.Ed.2d 440 (1968) ("The aim of the [Act] is to stamp out unfair business practices and businesses which persist in practicing them."); *United States v. St. Regis Paper Co.*, 355 F.2d 688 (2d Cir.1966) (noting that the policy of the FTC Act is to promote and preserve competition); *Northam Warren Corp. v. Fed. Trade Comm'n*, 59 F.2d 196 (2d Cir.1932) ("[The purpose of the Act] is to strike down at their inception practices which are unfair and which, if permitted to run their full course, would result in the creation of a monopoly and an undue restraint of trade.").

In their second amended complaint, plaintiffs now allege that everything all of the defendants did allegedly were violative of LUTPA:

> "136. Defendants violated the Louisiana Unfair Trade Practices Act when they fired a pregnant woman with a medically-sensitive pregnancy, refused to accommodate her disability, illegally evicted her and her boyfriend (knowing

        that employment and housing is extremely difficult to find on Grand Isle), used threats of involving law enforcement, and barred them from the only grocery store in Grand Isle.

137. Defendants violated LUPTA when they deceived Vivian into believing she could keep her job if she obtained a doctor's note. Defendants' never intended to let Vivian keep her job, because as Shelly said – if Vivian could not lift over ten pounds, what did they need her for?

138. If Defendants submitted Vivian's pink slip to the Louisiana Workforce Commission, they violated LUPTA by submitting a pink slip that said Vivian "has not brought doctor's note to be off and has not kept employer informed as of when or if she will be returning to work." That pink slip constituted a deceptive practice because Vivian never asked "to be off" nor was she in control of when she could return to work.

139. If Defendants did *not* submit the pink slip to the Louisiana Workforce Commission, they violated LUPTA by creating a falsified pink slip that said it was submitted to the LWC when it was not."

Once again, Shelly Jambon was not the direct employer or landlord of the plaintiffs. See discussion on limited liability of shareholders, officers and directors of corporations and/or members and managers of limited liability companies, *supra*. As such, Shelly Jambon cannot be held individually liable for any alleged violation of LUTPA.

*Lead-Based Paint Disclosure*

Pursuant to 40 C.F.R. § 745.107, a lessor and/or property owner has a legal obligation to disclose information about the hazards of lead paint and provide a lessee with an informational pamphlet regarding lead hazards, promulgated by the Environmental Protection Agency, *prior* to the lessee's obligation under contract to lease the target housing. 42 U.S.C. 4852d. Additionally, if the lessor contracts with a rental agent, the agent is required to ensure compliance with this regulation. 42 U.S.C. 4852d(a)(4). Agent means any party who enters into a contract with a seller or lessor, including any party who enters into a contract with a representative of the seller or lessor, for the purpose of selling or leasing target housing. Target housing means any housing constructed prior to

1978, 40 C.F.R. § 745.103.

As has been shown *ad nauseam*, SHH Properties L.L.C. is the owner of property in which the Plaintiffs resided.[18] SHH Properties, L.L.C. was the lessor.[19] Jambon is not the owner or lessor, nor was she a contracted agent or representative of the owner/lessor.[20] Therefore, Jambon had no individual duty to make any disclosures and therefore, cannot be personally liable to the plaintiffs for any alleged breach.

*Conclusion*

In conclusion, Shelly Jambon is neither the employer or landlord of the plaintiffs. As such, she cannot be held personally liable in this matter.

Respectfully submitted,

STEPHENSON, CHÁVARRI & LAMBERT, LLC

*/s/ Kathleen D. Lambert*
Sean R. Dawson (#19542)
email: *dawsonjd@smclattorneys.com*
Kathleen D. Lambert (#19665)
email: *katlambert@smclattorneys.com*
400 Poydras Street, Suite 1990
New Orleans, LA 70130
Tel: (504) 523-6496│Fax: (504) 525-2846

---

[18] See Exhibit 1, ¶5, Affidavit of Shelly Jambon and Cash Sale registered in the records of Jefferson Parish at CIN 10809533 attached thereto as Exhibit 5.

[19] See Exhibit 1, ¶5, Affidavit of Shelly Jambon and Cash Sale registered in the records of Jefferson Parish at CIN 10809533 attached thereto as Exhibit 5.

[20] See Exhibit 1, ¶¶5, 6, & 10, Affidavit of Shelly Jambon and Cash Sale registered in the records of Jefferson Parish at CIN 10809533 attached thereto as Exhibit 5.

CERTIFICATE OF SERVICE

      I, Kathleen D. Lambert, do hereby certify that on June 8, 2018, that I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are authorized to receive electronic servicing and a copy of the foregoing has been served by email upon William Most, counsel for plaintiffs.

                                                */s/ Kathleen D. Lambert*
                                                  Kathleen D. Lambert