UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIVIAN PATZ, ET AL. | CIVIL ACTION |
|     Plaintiffs | |
| | NO. 17-3465 |
| VERSUS | |
| | SEC. E (MORGAN) |
| SUREWAY SUPERMARKET, ET AL. | |
|     Defendants | DIV. 1 (VAN MEERVELD) |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pending is a motion for partial summary judgment and dismissal of Counts 3, 6, 7, and 8 of the Second Amended Complaint [R. Doc. 59]. The Movant-Defendants, Walter H. Maples, Inc., SHH Properties, LLC, and Shelly Jambon, move against claims of breach of lease, trespass, housing discrimination, and unfair trade practices.

Plaintiffs' actions for breach of lease and trespass should fail because it is undisputed that Plaintiffs voluntarily-vacated occupancy of the residential premises. Thus, the Court should also dismiss Plaintiffs' claims that the same, ostensible eviction was housing discrimination and unfair trade practices.

The claims that Defendants committed unfair trade practices related to termination of employment should be dismissed for Plaintiffs' lack of standing. Plaintiffs also lack standing to assert that Defendants committed eviction-related unfair trade practices. And Plaintiffs' claim that their alleged banishment from shopping at their former place of employment is also beyond the scope of the unfair trade practices law.

1

## I.        Background

Plaintiffs, Vivian and Michael Patz, claim that Defendants are liable under various state and Federal laws.[1] The claims arise out of alleged delicts occurring during April 2016, and are tied to Plaintiffs' termination from employment at the Sureway Supermarket, which is located in Grand Isle, Louisiana.[2]

Plaintiffs seek damages on claims that Defendants are liable under federal and state law for pregnancy-based, employment discrimination against Vivian Patz.[3] They also claim that termination of Vivian Patz' employment at Sureway Supermarket was an unfair trade practice under Louisiana law.[4] Sureway Supermarket is the trade name of Defendant Walter H. Maples, Inc., a corporation controlled by Defendant Shelly Jambon.[5]

During employment with Sureway Supermarket, Plaintiffs were housed at 176 Nacarri Lane, an immoveable owned by Defendant SHH Properties, L.L.C., a company that is also controlled by Defendant Shelly Jambon.[6] This employment-based housing terminated along with their employ.[7]

Thus, Plaintiffs also complain about termination of their housing on allegations that Defendants are liable for wrongful eviction,[8] pregnancy-based housing discrimination, [9] and

---

[1] Second Amended Complaint.

[2] *Id.*

[3] *Id.*, Count One, ¶¶ 73-81; Count Two, ¶¶ 82-89; Count Five, ¶¶ 110-116.

[4] *Id.*, Count Eight, ¶¶ 132-39.

[5] Response to Defendant's Statement of Material Facts [R. Doc. 71-1], p.1.

[6] *Id.*

[7] Statement of Material Facts Which Present No Genuine Issue [R. Doc. 111-3], ¶¶5, 6, 12, 13.

[8] Second Amended Complaint, Counts Six-Seven, ¶¶ 117-131.

[9] *Id.*, Count Three, ¶¶ 90-96.

unfair trade practices. [10] They even sought recovery on grounds that they were denied lead paint hazard warnings before occupancy of the employee housing, but this claim was dismissed by partial summary judgment of this Court.[11]

Finally, Plaintiffs make a claim that Defendants committed unfair trade practices by allegedly prohibiting Plaintiffs from grocery shopping at Sureway Supermarket after termination of employment.[12]

## II.    Summary Judgment

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [13] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." [14] Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." [15]

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." [16] Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the

---

[10] *Id*., Count Eight, ¶¶ 132-39.

[11] Order and Reasons [R. Doc. 97].

[12] Second Amended Complaint, Count Eight, ¶¶ 132-39.

[13] Fed. R. Civ. P. 56(c).

[14] *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

[15] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." [17] "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. [18] Rather, the non-movant must come forward with "specific facts" that establish an issue for trial.[19]

### III.    Law and Argument

Defendants show that Plaintiffs' claims for breach of lease and trespass fail because the facts are that Plaintiffs voluntarily abandoned the residential premises. Consequently, Plaintiffs' claims that the same, alleged wrongful eviction renders Defendants liable for housing discrimination and unfair trade practices must also be dismissed.

The claims that Defendants committed unfair trade practices related to termination of employment should be dismissed for lack of standing. Plaintiffs also lack standing to claim unfair trade practices for the alleged eviction or the alleged banishment from Sureway Supermarket.

### a.    The Claims Arising Out of Alleged Wrongful Eviction Should be Dismissed, Because Plaintiffs Abandoned the Premises

With Counts 6 and 7 Plaintiffs demand recovery for breach of lease and trespass.[20] Plaintiffs argue that the three Defendants were collectively a landlord involved in the provision of housing to Plaintiffs under an oral lease; that Defendants were lessors and Plaintiffs were lessees of a residential apartment located in Grand Isle, Louisiana.[21] Plaintiffs then claim that

---

[17] *Id.*, at 322.

[18] Fed. R. Civ. P. 56(e).

[19] *Id.*

[20] Second Amended Complaint, ¶¶ 117-131.

[21] *Id.*, ¶¶ 93, 104-105.

they were evicted without the procedure and notice required by state law, and that Defendants used a threat of police intervention to repossess the apartment.[22]

As to the alleged eviction, the Defendants answer that Plaintiffs voluntarily left the property, and deny that any self-help was used to vacate the Plaintiffs.[23] Further, Defendants show herein that any claim for damages by self-help eviction should be dismissed, because there was no eviction: it is undisputed that Plaintiffs voluntarily vacated occupancy of the premises.

These complaints about breach of lease and trespass are an action on wrongful eviction, which is described in *Webber v. McMillan*, as follows: "a lessor has no right to take possession or in any way disturb possession of the lessee without first resorting to judicial process. If the lessor should wrongfully dispossess the lessee, he commits a trespass and becomes liable to the lessee in damages." [24] However, there is an "exception to these general rules which allows self-help by the lessor when the lessee has voluntarily abandoned the premises." [25] In *Weber*, there was a wrongful eviction where commercial lessee continued to conduct business, but Lessor padlocked the premises.[26]

The lessee's abandonment of the premises exempts the lessor "from liability for failing to comply with the eviction procedure before taking possession[.]" [27] "Abandonment is a factual determination." [28]

---

[22] *Id.*, ¶¶ 122-25, 129-31.

[23] Answer to Second Amended Complaint and Defendants' Affirmative Defenses, ¶¶ 147-48, 155 [R. Doc. 64].

[24] 285 So.2d 349, 351 (La. App. 4 Cir. 1973).

[25] *Id.*

[26] *Id.*

[27] *Island Grill, L.L.C. v. Island Grill, L.L.C.*, 220 So.3d 154, 159 (La. App. 4 Cir. 5/10/17) (internal quotations omitted).

[28] *Id.*

In making that determination, the courts require proof of an act of abandonment and a specific intent to abandon.[29] "Indicia of abandonment include a cessation of business activity or residential occupancy, returning keys to the premises, and removal of equipment, furnishings, or other movables from the premises." [30]

In *Scott v. MAC-RE, LLC*, the appellate court found that lessee's abandonment of the premises cured the claim for wrongful eviction.[31] The abandonment occurred where, among other things, lessee removed items of value and became absent from the premises.[32] The court explained that:

> Abandonment is a jurisprudential exception to the rule that landlords must follow the statutory eviction procedures found in La. Code Civ. P. art. 4701-4735. Louisiana Code of Civil Procedure Article 4731 states that after the required notice has been given, the lessor or owner ... may lawfully take possession of the premises without further judicial process, upon a reasonable belief that the lessee ... has abandoned the premises. In determining whether abandonment has occurred, there must be a showing that the lessee voluntarily relinquished the premises and intended to terminate without vesting ownership in another. The abandonment of property by a tenant to such an extent as to vest title and control in the landlord involves both an act of abandonment and specific intent to abandon.[33]

In the present case, there was also an abandonment of the premises. It is undisputed that the Plaintiffs voluntarily vacated the property, and their claims for wrongful eviction should thus be dismissed.

---

[29] *Id.*

[30] La. C.C.P. art. 4731(B).

[31] 211 So.3d 693 (La. App. 3 Cir. 2/8/17).

[32] *Id.*

[33] *Id.*, at 698 (internal quotations and citations omitted).

6

Vivian and Michael Patz were employees of Sureway Supermarket.[34] During their employment, Plaintiffs were housed at 176 Nacarri Lane on condition of their continued employment.[35] This housing is not available to the general public; instead it is artificially-affordable housing that is made available to Sureway employees to facilitate their employment in Grand Isle, a location with high rental rates.[36]

Plaintiffs' right to occupancy was terminated once they had both been fired from Sureway Supermarket.[37] Michael Patz knew that Plaintiffs' right to occupancy ceased with termination from employment.[38] And it was his custom, from prior stints at Sureway Supermarket, to move out from employee housing on the same day as he was fired.[39] Vivian Patz also knew her right to continue to live in the housing was dependent upon continued employment with Sureway.[40]

Plaintiffs were fired during April 2016.[41] According to Michael Patz, he learned of his termination from Sureway employment when a Sureway employee named David came to 176 Nacarri Lane.[42] Michael accepts that he was fired because he was not at work for his shift that morning.[43] Vivian testifies that she learned of her termination at the same time that Michael discovered his termination.[44] It was on April 23, 2018 that David Felarise went to fire Michael.[45]

---

[34] Statement of Material Facts Which Present No Genuine Issue [R. Doc. 111-3], ¶1.

[35] *Id.*, ¶5

[36] *Id.*

[37] *Id.*, ¶6

[38] *Id.*, ¶12

[39] *Id.*

[40] *Id.*, ¶13

[41] *Id.*, ¶4

[42] *Id.*, ¶8.

[43] *Id.*, ¶7.

[44] *Id.*, ¶9.

Michael Patz testifies that he and Vivian moved out that same day of his termination, and Vivian Patz agrees.[46] Plaintiffs did not have to move any furniture when they left, because the apartment was furnished.[47] They simply went to Sureway for boxes, packed up their belongings, and cleaned out the apartment.[48] Plaintiffs moved their own property off the premises, and no one from Sureway was involved with removing Plaintiffs' property.[49]

Before leaving the premises, Michael Patz called a Justice of the Peace to investigate whether the Defendants could immediately force Plaintiffs off the premises, or whether the law allowed them "cushion" of time to leave the premises.[50] The Justice of the Peace informed Michael that any attempt to force them from the property the same day was illegal.[51]

Thus, Plaintiffs voluntarily left the premises despite knowledge that they did not have to leave the same day. Regardless of any allegations that that they were threatened to leave the property the same day, Plaintiffs knew it was illegal to force their immediate departure. But they left anyway.

On April 25, 2018 Denise Esponge, a Sureway employee, went to the property to post a written, five-day notice to vacate the premises. When she arrived, Plaintiffs had already cleared-out from the premises.[52]

The facts are that it was not until two days after David Felarise went to the premises, and Plaintiffs left, that any affirmative act was taken to promote Plaintiffs' relocation. And even then,

---

[45] *Id.*, ¶10.
[46] *Id.*, ¶¶11, 14
[47] *Id.*, ¶¶15-16.
[48] *Id.*
[49] *Id.*, ¶17.
[50] *Id.*, ¶¶18-19.
[51] *Id.*
[52] *Id.*, ¶20.

the only act was to visit the premises to post a 5-day notice to vacate. But Plaintiffs were already gone, and there was no longer any need to post the notice.

Thus, it is undisputed that this is a case of abandonment, not wrongful eviction. Accordingly, the claims for breach of lease and trespass should be dismissed.

**b.   The Claim Arising Out of Alleged Housing Discrimination Should be Dismissed, Because There Was No Eviction**

With Count 3, Plaintiffs claim housing discrimination occurred when Vivian Patz was allegedly "evicted because of her pregnancy." [53] The Fair Housing Amendments Act of 1988 makes it is unlawful to "make unavailable ... a dwelling to any person because of ... familial status[.]" [54]

However, as discussed herein at Section III.a., the undisputed facts are that a wrongful eviction did not occur. Instead, Plaintiffs abandoned occupancy. If Plaintiffs abandoned the premises, they cannot substantiate a claim that Defendants made the housing 'unavailable.' Thus, there cannot be a finding that housing discrimination took place.

**c.   The Claims Arising Out of Alleged Unfair Trade Practices Should be Dismissed**

At Count 8, Plaintiffs demand that Defendants pay damages for violation of the Louisiana Unfair Trade Practices Act.[55] As to LUTPA, Plaintiffs specifically allege that violations occurred when Defendants:

> Wrongfully evicted Vivian and Michael Patz from employee housing "knowing that employment and housing is extremely difficult to find on Grand Isle," and "used threats of involving law enforcement" to advance the eviction,[56]

---

[53] Second Amended Complaint, ¶¶ 90-96.

[54] 42 U.S.C. 3604(a).

[55] Second Amended Complaint, ¶¶ 132-39.

[56] *Id.*, at ¶ 136.

Prohibited Vivian and Michael Patz from patronizing Sureway Supermarket, "the only grocery store in Grand Isle," [57]

Terminated Vivian Patz from employment with Sureway despite her "medically-sensitive pregnancy, [and] refused to accommodate her disability," [58]

Misled Vivian Patz to believe that "she could keep her job if she obtained a doctor's note," whereas the Defendants were predetermined to terminate her employ if she were unable to lift ten pounds,[59]

Misled the Louisiana Workforce Commission by submitting an inaccurate "pink slip" for Vivian Patz' termination, or alternatively misled Vivian Patz by creating but not submitting a pink slip to the LWC.[60]

The eviction-based LUTPA allegations are a restatement of Plaintiffs' above-discussed claims for breach of lease, trespass, and housing discrimination. And the employment-based LUTPA allegations are a restatement of Plaintiffs' pending claims for pregnancy-related, employment discrimination.[61]

The Louisiana Unfair Trade Practices and Consumer Protection Law[62] declares that it is "unlawful" to use or employ "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" [63] The legislation creates, *inter alia,* a private right of action "to recover actual damages" for a "person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or

---

[57] *Id.*

[58] *Id.*

[59] *Id.*, ¶ 137.

[60] *Id.*, ¶ 139.

[61] *Id.*, Count One, ¶¶ 73-81; Count Two, ¶¶ 82-89; Count Five, ¶¶ 110-16.

[62] La. R.S. 51:1401, *et seq.*

[63] Sec. 1405(A).

employment by another person" of these unlawful methods, acts or practices.[64] "LUTPA is essentially penal in nature and as such is subject to reasonably strict construction." [65]

The Louisiana Supreme Court recently summarized the ongoing efforts to define what is LUTPA-prohibited, as follows:

> In LUTPA, the legislature declared it to be unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Because of the broad sweep of this language, Louisiana courts determine what is a LUTPA violation on a case-by-case basis.[66]

> This court has consistently held that in establishing a LUTPA claim, a plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. The range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence.[67]

> Only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA.[68]

The range of LUPTA-prohibited practices is quite narrow.[69] The statute "does not does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." [70]

With *Tubos de Acero de Mexico, S.A. v. American International Investment Corp.*, the U.S. Fifth Circuit Court of Appeals determined that "LUTPA's private right of action is limited to direct consumers or to business competitors," and held that only direct consumers or business

---

[64] Sec. 1409(A).

[65] *Harp v. Autrey*, 121 So.3d 1260, 1266 (La. App. 2 Cir. 8/21/13), writ denied, 126 So.2d 1286 (La. 12/2/13).

[66] *Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc.*, 144 So.3d 1011, 1025 (La. 5/7/14) (internal quotations omitted).

[67] *Id.*

[68] *Id.*

[69] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993).

[70] *Id.*

competitors have standing to sue under the Act.[71] Thus, to have standing under LUTPA a plaintiff must demonstrate that she is either a consumer or a business competitor vis-à-vis the defendant.[72] This is the consistent holding of the Fifth Circuit.[73]

The *Tubos* decision is challenged by a plurality opinion of the Louisiana Supreme Court in *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*[74] Considering LUPTA standing, the *Cheramie* court held that the Act "does not contain a clear, unequivocal and affirmative expression that the private right of action ... extends only to business competitors and consumers."[75]

However, *Cheramie* has little value as precedent on the standing issue, because this opinion was only joined by three of seven justices.[76] *Cheramie* "does not represent a holding of the majority of the Louisiana Supreme Court and does not have binding effect on Louisiana state courts or this Court.[77] Absent a "majority opinion of the Louisiana Supreme Court definitively interpreting standing under LUTPA, the [U.S. District Court] will follow the binding Fifth Circuit holding in *Tubos*[.]"[78]

### i.   Plaintiff Lacks Standing to Claim that Her Employment Termination Became a LUTPA Violation

The gist of this entire action is Vivan Patz' termination from employment with Sureway. Since she was pregnant at the time, she brought claims for employment discrimination. As a fail-

---

[71] 292 F.3d 471, 480 (5th Cir. 2002).

[72] *Id.*

[73] *BABA Lodging, LLC v. Wyndham Worldwide Operations, Inc.*, Civil Action 10-1750, 2012 WL 13041532, *2 (W.D.La. 3/19/12).

[74] 35 So.3d 1053 (La. 04/23/10).

[75] *Id.*, at 1058.

[76] *BABA Lodging, LLC*, supra, at *4.

[77] *Id.*

[78] *Id.*

safe, Plaintiffs claim that termination of her employment was also an unfair trade practice under Louisiana law.

Several of the alleged, LUTPA-contrary acts are related to Vivian Patz' employment: she was fired despite pregnancy; Defendants refused to accommodate her pregnancy; Defendants lied about motivation for her firing; Defendants lied for purposes of thwarting her unemployment insurance claim. These employment-related LUTPA claims should be dismissed, because they do not fall within the scope of LUTPA.

In the context of Vivian Patz' termination from employment, there are no allegations that she was a consumer or competitor to Defendants. Nor is it reasonable to construe that Vivian Patz was a consumer or competitor under any of the alleged, employment-related acts. Thus, based on the *Tubos* rule, Vivian Patz lacks standing to claim that her termination from employment was a LUTPA violation.

With LUTPA the legislature did not intend to "to create a vehicle ... for employees to pursue grievances against employers." [79] The Courts have struggled to find LUTPA standing for a discharged employee to sue her former employer.

In *Gil v. Metal Service Corp.,* a discharged employee sued his former employer on claims of unlawful termination.[80] The trial court ruled that the employee-plaintiff could not sustain a claim that his discharge was a LUTPA violation.[81] The appellate court affirmed that the employee did not have a cause of action under LUTPA.[82]

---

[79] *Dale v. IDS Financial Services, Inc.*, Civil Action No. 91-289-A, 1992 WL 111834, *2 (M.D. La.1992).
[80] 412 So.2d 706, 707 (La. App. 4 Cir. 1982), writ denied, 414 So.2d 379 (La. 1982).
[81] *Id.*
[82] *Id.*

In *Davis v. Manpower International, Inc.,* the plaintiff alleged that adverse working conditions forced her resignation, and brought claims for, among other things, gender discrimination and unfair trade practices.[83] The trial court granted summary judgment against the LUTPA claim.[84] And the appellate court agreed that the plaintiff did not have standing to allege the termination of her employment involved unfair trade practices.[85]

A review of successful LUTPA claims involving the employer-employee relationship reveals a focus on disloyal employees.[86] In these cases, what offends LUTPA is the employee's breach of special trust in seeking profit from the misappropriation of employer's resources.[87]

In *National Oil Service of Louisiana, Inc., v. Brown*, the court found LUPTA violations where defendant-employees "schemed to virtually close down plaintiff's business while starting their own, using the same customers, the same key employees, much of plaintiff's equipment and some of the capital obtained through the sale of plaintiff's [products]."[88]

In *Roustabouts, Inc. v. Hamer,* employees were liable to employer under LUTPA where they conspired and "exhibited a clear intent to decimate the plaintiff's business for their own gain, and ... engaged in basic business dishonesty of an unscrupulous and underhanded nature."[89] And in *Dufau v. Creole Engineering, Inc.*, a disloyal employee violated LUPTA by diverting employer's business opportunities.[90]

---

[83] 623 So. 2d 946 (La. App. 4th Cir.1993), writ denied, 629 So. 2d 1173 (La.1993).

[84] *Id.*

[85] *Id.*, at 947.

[86] *Turner v. Purina Mills, Inc.,* 989 F.2d 1419, 1422 (5th Cir.1993).

[87] *Id.*

[88] 381 So.2d 1269, 1273-73 (La. App. 1 Cir. 1980).

[89] 447 So.2d 543, 549 (La. App. 1 Cir. 1984).

[90] 465 So.2d 752, 757-58 (La.App. 5th Cir.1985), writ denied, 468 So.2d 1207 (La.1985).

The present case involves an employee's attempt to fashion her firing into a LUTPA claim. This is the same approach that has been repeatedly repudiated by the courts. Thus Vivian Patz' employment-related, LUTPA claims are outside the scope of this law and should be dismissed.

A Louisiana employer is at liberty to dismiss an employee at any time "without assigning any reason for doing so." [91] Of course, this right is tempered by numerous federal and state laws which proscribe certain reasons for dismissal of an at-will employee. For instance, an employee cannot be terminated because of his race, sex, disability or religious beliefs. But LUTPA was not enacted to protect employees.

LUTPA was enacted in 1972 and "modeled after the Federal Trade Commission Act of 1914." [92] Both Acts were "adopted with the same goals in mind: to protect consumers and to foster competition." [93]

The FTC created only regulatory power to act "in instances where a proceeding would be in the best interest of the public." [94] However, the FTC did not create a private right of action. Thus, in the 1950s began a national trend of enacting so-called 'Little FTCs,' state analogues to the FTC meant to supplement the FTC.[95] Louisiana's Little FTC is LUTPA, which added a private right of action to curb unfair or deceptive trade practices. [96]

---

[91] La. C.C. art. 2747.

[92] Keith E. Andrews, *Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law*, 41 Loy. L. Rev. 759, 759 (1996).

[93] *Id.*, at 777.

[94] *Id.*, at 776.

[95] *Id.*, at 759.

[96] *Id.*

LUTPA is needed to protect against "activities that are clearly unethical and against public policy but, absent LUTPA, would not otherwise be unlawful."[97] Thus, LUTPA is most useful where there is no other basis to prohibit a defendant's unfair tactics.

LUTPA is a Little FTC, it is not state analogue to the various federal laws that prohibit employment discrimination. LUTPA is not needed to supplement other protections against employment discrimination. There are other statutes that prohibit employment discrimination and establish private rights of action for the employee. And Vivian Patz has even invoked these other bases for action on alleged pregnancy-based, employment discrimination.[98]

There is simply no need or basis for extending LUTPA to reach the employment-related acts alleged herein. Accordingly, the Court should reject the Plaintiffs' employment-related LUTPA action. To do otherwise would expand the legislation's reach beyond that which the legislature intended.

ii.     **Plaintiffs Cannot Substantiate an Eviction-Related LUPTA Claim**

Plaintiffs also assert that their alleged, wrongful eviction was an unfair trade practice. However, LUTPA "does not provide an alternative remedy for simple breaches of contract."[99] The difference between a breach of contract and the egregious behavior prohibited by LUTPA is open to "a great deal of daylight[.]"[100]

Moreover, Plaintiffs' best argument for LUTPA standing on the eviction claims is to construe themselves as lessee-consumers. But the Plaintiffs' housing arrangements were

---

[97] *Id.*, at 769.
[98] Second Amended Complaint, Count One, ¶¶ 73-81; Count Two, ¶¶ 82-89; Count Five, ¶¶ 110-116.
[99] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993).
[100] *Id.*

available to Sureway employees, not the public at large.[101] Thus, LUTPA cannot be invoked in these regards, because to do so does not serve the legislative purpose of protecting the consuming public.

Regardless, dismissal of the wrongful eviction claims precludes any conclusion that unfair trade practices took place in termination of Plaintiffs' housing arrangements. As discussed herein at Section III.a., the undisputed facts are that a wrongful eviction did not occur, because Plaintiffs abandoned occupancy.

If Plaintiffs abandoned the premises, they cannot substantiate a claim that they were evicted under circumstances involving elements of fraud, misrepresentation, deception, or other unethical conduct. Accordingly, the eviction-related LUTPA claims should be dismissed.

### iii.     Plaintiffs Cannot Substantiate a Banishment-Related LUTPA Claim

For their last claim, Plaintiffs allege that after being fired, they were prohibited from shopping at Sureway Supermarket. Plaintiffs claim that they were banished from Sureway, and that this act constitutes an unfair trade practice.

Defendants deny that either Michael or Vivian Patz were ever banished from patronizing Sureway Supermarket after their employment was terminated.[102] Further, it is undisputed that Plaintiffs simply assumed that they could no longer shop at Sureway Supermarket.[103]

Maybe Plaintiffs' were angry that they were fired, maybe they were embarrassed. But Plaintiffs cannot identify any person who prohibited them from entering Sureway

---

[101] Statement of Material Facts Which Present No Genuine Issue [R. Doc. 111-3], ¶5.

[102] *Id.,* ¶21.

[103] *Id.,* ¶¶22-23.

Supermarket.[104] Also, there are no allegations that at any particular time Plaintiffs actually were denied access to Sureway Supermarket.

Additionally, the facts are that both Plaintiffs previously worked at Sureway Supermarket; Michael Patz was fired on his two previous stints at Sureway Supermarket, and Vivian Patz quit her first time around.[105] And the they were rehired. It is counter-intuitive to suggest that Sureway Supermarket would banish former employees as customers but welcome them as returning employees.

Plaintiffs may have assumed that they could no longer patronize Sureway Supermarket. But Plaintiffs' insecurities or assumptions cannot form the basis for a claim that Defendants committed unfair trade practices.

Even assuming that these fired employees were forbidden to enter the premises, such action does not come within the ambit of LUTPA. Plaintiffs do not have standing for this claim, because their non-customer status would prevent them from standing as a LUTPA consumer.

Further, a business "generally has a right to deal, or refuse to deal, with whomever it likes[.]" [106] This "right to refuse to deal with another" is nearly absolute.[107] LUTPA permits the exercise of sound business practices, permissible business judgment and appropriate free enterprise.[108] And if Sureway did banish fired employees from shopping in the store, there are sound business reasons for doing so.

---

[104] *Id.*

[105] *Id.*, at ¶¶2-3.

[106] *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 761 (1984).

[107] *Sandolph v. P & L Hauling Contractors, Inc.,* 430 So.2d 102, 103 (La. App. 5th Cir. 1983).

[108] *SDT Indus. Inc. v. Leeper*, 34,655 (La.App. 2 Cir. 6/22/01), 793 So.2d 327, writ denied, 2001–2558 (La.12/7/01), 803 So.2d 973.

"[T]here is no LUTPA violation when the alleged conduct is simply the appropriate exercise of good business judgment and the proper workings of free enterprise." [109] "An unwise business decision does not in and of itself create an unfair trade practice. Such a decision, even if unwise, falls within the parameters of a permissible business judgment." [110]

Restricting the access to the work site of a former employee does not negatively impact effective and fair competition, nor does it lead to a monopoly and unfair restraint of trade within an industry. In fact, restricting access to the workplace of a person who has been fired is a sound, rational way to prevent potential workplace violence, among other things.

Even if the Patzes were forbidden to shop at Sureway, this does not rise to the level of a LUTPA-prohibited act. Thus, the court should dismiss the claim that Defendants engaged in unfair trade practices by banishing the former employees.

## IV.    Conclusion

Defendants show that Plaintiffs claims for trespass and wrongful eviction fail because the facts are that Plaintiffs abandoned the residential premises. Similarly, Plaintiffs' claim that the same alleged eviction renders Defendants liable for housing discrimination and unfair trade practices must be dismissed, because the Plaintiffs voluntarily vacated the property.

The Court should dismiss the claims that Defendants somehow violated LUPTA in deciding to terminate Vivian Patz' employment, because LUPTA does not cover the employer-employee relationship in this case. The Court should also dismiss eviction-related LUTPA claim, because it is outside the legislation's scope.

---

[109] *Vermillion Hospital, Inc. v. Patout*, 906 So.2d 688, 692 (La. App. 3 Cir. 6/8/05)
[110] *Id.*, at 694-95.

Finally, the Court should dismiss the claim that Defendants transgressed LUPTA by allegedly refusing service to Plaintiffs at the supermarket. This claim fails because there was no banishment, only Plaintiffs' assumptions, and LUTPA cannot be stretched to cover these circumstances.

<table>
<tr><td>

<u>CERTIFICATE OF SERVICE</u>

By my signature to this pleading, I, William B. Gordon III, also certify that on October 16, 2018 , I electronically filed a copy of the foregoing pleading with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

</td></tr>
</table>

Respectfully submitted:

Stephenson, Chávarri & Dawson, L.L.C.

/s/ William B. Gordon III
Sean R. Dawson, T.A. (LSBA# 19542)
William B. Gordon III (LSBA#28056)
400 Poydras Street, Suite 1990
New Orleans, Louisiana 70130
Tel. No. (504) 523-6496
wgordon@smclattorneys.com