UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIVIAN PATZ and MICHAEL PATZ, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No.: 2:17-cv-03465 |
| v. ) | |
| ) | Judge Susie Morgan |
| SUREWAY SUPERMARKET, *et al.* ) | Magistrate Janis Van Meerveld |
| ) | |
| Defendants. ) | |

## **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT TO PIERCE DEFENDANTS' CORPORATE VEIL**

Plaintiffs move this Court for partial summary judgment on the issue of Defendant Shelly Jambon's personal liability.

Ms. Jambon is the sole owner of Walter H. Maples, Inc., and SHH Properties, L.L.C. The undisputed facts show that Ms. Jambon uses the two corporations as an extension of herself.

Ms. Jambon commingles the resources of both corporations, has employees of one corporation do uncompensated work for the other, has employees do work on her personal home, allows friends and family to stay in corporate-owned housing for free, fails to conduct regular shareholder and director meetings, and has undercapitalized SHH Properties, L.L.C.

These and other facts show that Ms. Jambon has wielded these corporations as an alter ego, and the corporate veil should therefore be pierced.

### I.    Factual Background

Shelly Jambon has been the sole owner and operator of Walter H. Maples, Inc. (hereafter, "Maples") d/b/a Sureway Supermarket since approximately 2003 (R. Doc. 115-4, Depo. Shelly Jambon, Pg:10, Ln:2-5) and of SHH Properties, L.L.C. (hereafter, "SHH") for at least five years

1

(R. Doc. 115-4 at Pg:76, Ln:1-9). Maples does business as a supermarket in Grand Isle, Louisiana, and SHH owns apartments solely rented to Maples employees. *Id*. at Pg:80, Ln:6-21.

Ms. Jambon does not draw clear lines between Maples, SHH, and her personal finances. For instance, Ms. Jambon directs her Maples employees to complete tasks for SHH, such as posting eviction notices and conducting regular maintenance (*See, e.g.,* R. Doc. 115-5, Pg:42, Ln:16-18; R. Doc. 115-4, Pg:82, Ln:22 – Pg:83, Ln:11) and orders Maples employees to work on her personal property while being compensated by Maples. *Id*. at Pg:176, Ln:19 – Pg:177, Ln:10 She has instituted a process by which Maples secretaries take SHH rent from Maples employees' paychecks when they are cashed. R. Doc. 115-5, Pg:48, Ln:11 – Pg:49, Ln:6; R. Doc. 115-4, Pg:86, Ln:4-11. Neither Maples nor SHH has regular business meetings, and in the rare instance they do Ms. Jambon conducts both meetings simultaneously. R. Doc. 115-4 Pg:171, Ln:8 – Pg:173, Ln:1. SHH exists for the sole purpose of providing a exclusive Maples employee housing contingent on employment (Ex. C at 5.) and as a result SHH is undercapitalized (Ex. D).[1]

Plaintiffs Vivian and Michael Patz worked for Maples, Vivian being hired on January 18, 2016, and Michael on March 17, 2016. R. Doc. 115-1 (Response to Defendants' Statement of Material Facts that Present No Genuine Issue) at 1. During their most recent stint as Maples employees, Vivian and Michael Patz lived together in an SHH apartment at 176 Nacarri Lane in Grand Isle. *Id*. at 5. In April, 2016, however, Ms. Jambon ordered Vivian Patz home from work at Maples after finding out that she was pregnant (R. Doc. 115-2 (Decl. of Vivian Patz) at ¶ 4) and ultimately terminated both Vivian and Michael. *Id*. at ¶¶7-9. Vivian and Michael were also illegally evicted from the SHH property at that time, as Ms. Jambon only allowed them eight

---

[1] Exhibit D contains financial records of Maples and SHH, and is therefore being filed under seal. See contemporaneous Motion for Leave to File Under Seal.

hours to vacate the premises and provided no notice or procedure. *Id*. at ¶ 10-11. Vivian and Michael were then banned from returning to the supermarket as customers and forced to live in their car and Vivian suffered throughout her pregnancy as a result. R. Doc. 115-2 at ¶ 19.

On April 14, 2017, Vivian and Michael Patz filed this lawsuit. R. Doc. 1.

## II. Summary Judgment Standard

Summary judgment is appropriate when there "is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).

Although there are many disputed facts in this case, they do not involve Ms. Jambon's ownership or operation of Maples or SHH. Ex. A ("Statement of Material Facts Which Present No Genuine Issue."). Because the undisputed facts meet the factors for piercing the corporate veil as detailed in the following discussion, partial summary judgment regarding Ms. Jambon's personal liability with regard to the actions of Maples and SHH should be granted.

## III. Discussion

The general rule in Louisiana is that corporations are distinct legal entities from the individuals that compose them. But it is appropriate in some circumstances to hold those individuals personally liable for corporate actions. *Middleton v. Parish of Jefferson*, 707 So. 2d 454, 456 (La. App. 5 Cir. 1998); ORX Resources, Inc. v. MBW Exploration, LLC, 09–662, p. 7 (La.App. 4 Cir. 2/10/10) (piercing the corporate veil "applies to limited liability companies" as well as corporations). This remedy of piercing the corporate veil is only for "exceptional circumstances," but Shelly Jambon's actions with regard to Maples and SHH meet that high requirement. *Sparks v. Progressive American Insurance Co*., 517 So. 2d 1036, 1039 (La. App. 3 Cir. 1987). In all cases, the totality of the circumstances must be considered when determining

whether piercing the corporate veil is appropriate. *Kingsman Enterprises, Inc. v. Bakerfield Elec. Co., Inc.*, 339 So.2d 1280 (La. App., 1976).

The primary exception which would justify piercing the corporate veil is the presence of fraud, "or that piercing the veil is necessary to avoid inequitable results." *Huard v. Shreveport Pirates, Inc.*, 147 F.3d 406, 409 (5th Cir. 1998) ("The Louisiana courts have indicated that the corporate veil should be pierced when adherence to the corporate fiction would clearly result in inequity"); *see also*, *Veterans Bros. No. 126, L.L.C. v. 7-Eleven, Inc.* (E.D. La., 2017).

Absent fraud, there are other factors that can trigger liability under an "alter ego" theory, which include but are not limited to: "1) comingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings." *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1168 (La. 1991). These factors are instructive, but non-exclusive and a moving party does not have to prove all five, so long as the totality of the circumstances justifies piercing the veil. *Kingsman Enterprises, Inc. v. Bakerfield Elec. Co., Inc.*, 339 So.2d 1280 (La. App., 1976).

Piercing the veil in this case is necessary to achieve an equitable result. Ms. Jambon has used her corporate alter egos to perpetuate wrongs against the Plaintiffs and others, and her actions satisfy each of the non-exclusive factors used to determine when piercing the veil is appropriate.

### a. Shelly Jambon is the sole owner of both Maples and SHH

Among the reasons Louisiana courts "may ignore the corporate fiction and hold the individual shareholders liable" for corporate actions is that the corporation essentially functions as an individual shareholder's "alter ego," considering the factors detailed below. *Riggins v.*

*Dixie Shoring Co., Inc*., 590 So.2d 1164 (La., 1991). Here, it is undisputed that Shelly Jambon is the sole decisionmaker and owner of both Maples and SHH, therefore triggering the alter ego analysis. *Id*.

It is undisputed that Maples is a corporation and Shelly Jambon is its sole shareholder. Ex. B ("Corporate Disclosure Statement"); R. Doc. 115-4, Pg:12, Ln:1-14 ("Q: Okay. Are you the sole owner of Walter H. Maples, Incorporated? A. Yes."); *see also, id*. at Pg:167, Ln: 19-21.

It is also not disputed that Ms. Jambon is currently the only owner of SHH. Although her children, Harley Landry and Holden Landry, are members of the LLC (Ex. B), Ms. Jambon owns "100 percent of SHH." R. Doc. 115-4, Pg:167, Ln:4-16. Further, Ms. Jambon is the only one of members to engage in work for SHH. Ms. Jambon is the only member to enter into contracts on behalf of SHH, including the oral lease with Vivian and Michael Patz. R. Doc. 115-2 ("Declaration of Vivian Patz") at 15 ("As far as Michael and I knew, Shelly was our boss and landlord.") Ms. Jambon is the only member known to direct others to do work on behalf of SHH. R. Doc. 115-5 ("Deposition of Denise Esponge") Pg:58, Ln:19 – Pg:59, Ln:8.

Ms. Jambon is the sole owner and the ultimate manager of both organizations, and therefore a discussion of alter ego liability is appropriate.

### b.  SHH operates solely for the benefit of Maples

When assessing whether to pierce the veil of multiple corporations, Louisiana "jurisprudence has held if one corporation is wholly under the control of another, the fact that it is a separate entity does not relieve the latter from liability." *Amoco Production Co. v. Texaco, Inc*., 838 So.2d 821, 834 (La. App., 2003) ("When corporations represent precisely the same single interest, the court is free to disregard their separate corporate identity."). The veil of multiple corporations can be pierced and held solidarily liable with the controlling shareholder when their identities and purpose become indistinguishable. *Hamilton v. Aai Ventures, L.L.C*.,

768 So.2d 298, 302 (La. App., 2000). In *Hamilton*, this was found to be true because, among other reasons, the corporations had an overlapping organizational chart, confusion regarding job titles and roles of employees straddling both corporations, and one corporation existed solely for providing a specific task in furtherance of the dominant corporation's goal, in that case to conduct asbestos removal. *Id*. at 303.

Here, SHH has no organizational chart as Shelly is, as discussed, the sole decisionmaker (R. Doc. 115-4, Pg:167, Ln:4-16), a role that mirrors her status as the sole owner of Maples. R. Doc. 115-4, Pg:12, Ln:1-14; *see also*, *Id.* at Pg:167, Ln: 19-21. Maples is the only organization of the two that claims employees, but those employees are directed by Ms. Jambon to complete tasks for both Maples and SHH without a clear demarcation of responsibilities. *See, e.g.*, R. Doc. 115-5, Pg:58, Ln:19 – Pg:59, Ln:8. (Denise Esponge, a Maples employee, explaining that Ms. Jambon directs her to do work for SHH such as post eviction notices while being compensated by Maples); *Id*. at Pg:82, Ln:22 – Pg:83, Ln:11 (detailing how David Felarise, a Maples employee, works on SHH property while being paid by Maples); *Id*. at Pg:85, Ln:15-22 (affirming that Maples employees collect rental payments on behalf of SHH). Maples and SHH even hold joint meetings with their mutual CPA. R. Doc. 115-4, Pg:172, Ln:25 – Pg:173, Ln:1.

Further, the corporations are virtually indistinguishable as SHH exists for the sole purpose – at least as stated by Ms. Jambon – to provide a service for Maples; specifically, housing for employees. As Ms. Jambon states in a sworn declaration:

> Due to the high rental rates in Grand Isle, Sureway helps some employees find affordable housing by offering the use of employment-related housing at cost, which is a fraction of average rent; use of this employer-subsidized housing is contingent upon continued employment with Sureway.

R. Doc. 114-4 (Declaration of Shelly Jambon) at ¶ 5; *see also*, R. Doc. 115-4, Pg: 97, Ln:11.

According to Ms. Jambon, SHH rental properties are available for full-time occupancy for Maples employees and as a condition of their employment, and for Maples customers as a perk of their patronage. *Id*.; Ex. C (SHH's Response to Plaintiff's First Set of Interrogatories); R. Doc. 115-4, Pg:87, Ln:15-21. SHH does not conduct any business outside of this exclusive relationship with Maples, and SHH operates at a significant loss each year as it could not exist but for existing as an extension of Maples. Ex. D (SHH Financial Statements, 2015-2017) (documenting net annual losses of $5,441.00, $7,099.00, and $25,757.00). Because of the exclusivity and that the two corporations are virtually indistinguishable, they should be solidarily liable along with Ms. Jambon who operates the corporations as her alter ego.

### c. Ms. Jambon commingles resources between Maples, SHH, and her personal finances

Louisiana courts have held that commingling resources between corporations or a corporation and its "alter ego" shareholder may be enough, on its own, to justify piercing the corporate veil. *Cargill, Inc. v. Clark*, 17 (M.D. La., 2015); *see also*, *Morreale v. Morreale*, 10 So.3d 1281, 1285-86 (La. Ct. App. 2009). Ms. Jambon routinely commingled funds in three primary ways: (1) paying Maples employees to do work on SHH and her personal properties; (2) collecting income for SHH directly from Maples' employee checks; and (3) allowing Maples customers to stay at SHH properties as a perk of their Maples patronage. Additionally, both corporations operate out of the same office and the books for each are stored together. R. Doc. 115-5, Pg:60, Ln:3-9.

As discussed, Ms. Jambon often ordered Maples employees who did not work for SHH to complete work tasks on behalf of SHH. For example, Denise Esponge and David Felarise, both Maples employees, is tasked with providing eviction notices to SHH tenants, including Vivian

and Michael Patz. R. Doc. 115-5, Pg:42, Ln:16-18 ("I do that for everybody"); *Id*., Pg:45, Ln:19-23. Ms. Esponge does work for SHH on the direct orders of Ms. Jambon:

> Q: This might be a stupid question, but why do you [post eviction notices and collect rent for SHH]? I mean, if that's – SHH isn't your employer; Walter H. Maples is your employer, why are you doing stuff for – for the apartment complex?
> A: Because Walter H. Maples, Incorporated employees reside in those places.
> Q: Okay
> A: That's part of us being able to have them as an employee.
> Q: Okay. Did Shelly ask you to do these tasks related to the employee housing? Who originally told you that this was part of your job?
> A: Shelly.

*Id*. at Pg:58, Ln:19 – Pg:59, Ln:8; R. Doc. 115-4 Pg:94, Ln:10-11 ("Q: Who puts the notice up on the door? A: Usually Dennis or David."). David Felarise, in addition to posting eviction notices for SHH, also did maintenance work on SHH properties while being compensated by Maples. R. Doc. 115-4, Pg:82, Ln:22 – Pg:83, Ln:11. Ms. Jambon also had Maples employees work on her personal home and on her husband's condo in New Orleans. *Id*. at Pg:174, Ln:2 – Pg:176, Ln:23. Further, when Maples employees did work for SHH or at Shelly's personal home, they were paid by Maples:

> Q: Sure. Is having people from Sureway work on your home the kind of thing that has happened in the past?
> A: It has been done. They might blow off my driveway. If that's "working on," yes.
> . . .
> Q: Okay. Did you pay them extra to blow off your driveway?
> **A: No. They would have been on the clock.**
> A: Okay, and when you say your driveway, you mean the driveway of your personal home? Is that what you're talking about?
> A: It might have been the driveway of my personal home. It could have been the driveway by the apartments.

*Id*. at Pg:176, Ln:19 – Pg:177, Ln:10 (emphasis added). Compensating employees from the funds of one corporation to do work for another corporation or the "alter ego" shareholder constitutes commingling of resources.

8

Further, Maples employees took rental payments for SHH tenants from their Maples paychecks, commingling funds through Maples employees providing free labor for SHH and because the rental payment process amounts to a direct deduction from the tenants' paychecks. The process for Maples employees to pay rent at SHH properties, as described by Ms. Jambon and Ms. Esponge, is essentially the following: (1) Maples employee receives their Maples paycheck; (2) Maples employee cashes that check with a Maples secretary; (3) the Maples secretary hands the Maples employee cash in the amount of their paycheck, minus the amount of SHH rent owed; and (4) the Maples secretary deposits the SHH rental payment in an SHH drawer. R. Doc. 115-5, Pg:48, Ln:11 – Pg:49, Ln:6; R. Doc. 115-4, Pg:86, Ln:4-11.

While Maples employees have SHH rent deducted from their paychecks, Ms. Jambon allows customers of Maples to use SHH apartments free of charge as a "perk" of their patronage of Maples:

> Q: Sure, yeah. Some customers and their families stay at the apartment complex without paying. Is that right?
> A: Yes.
> Q: Is that a perk of being a customer of Sureway Supermarket?
> A: Yes.

R. Doc. 115-4, Pg:87, Ln:15-21. Ms. Jambon also allows her non-customer personal friends and family to stay at SHH apartments without paying. *Id.* at Pg:86, Ln:18 – Pg:88, Ln:7. Because "Grand Isle is a vacation place" and the high rent in the area drives up real estate prices to the point that Maples employees cannot afford to live on the island without SHH rental rates, even a brief stay without charge could constitute a significant perk for Maples customers at the sole expense of SHH's bottom line. *Id.* at Pg:86, Ln:18 – Pg:88, Ln:7.

These actions constitute commingling of resources between corporations and Ms. Jambon, personally, which is enough on its own to justify piercing the corporate veil.

9

### d. Ms. Jambon failed to follow corporate formalities or hold regular shareholder meetings while conducting business as Maples and SHH

Disregarding regular corporate formalities can be another basis for piercing the corporate veil. *See, e.g., Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1169 (La., 1991). According to Ms. Jambon's sworn testimony, Maples does not hold regular business meetings, going without any meeting for years at a time. R. Doc. 115-4 Pg:171, Ln:8 – Pg:172, Ln:11. Ms. Jambon could not recall when the last meeting occurred or even if notes were taken at the meeting. *Id*. Although the meetings are so infrequent that Ms. Jambon cannot recall how many years have gone by since the last meeting, she does recall that these official corporate meetings for Maples are merged with the SHH meetings – business is conducted for both corporations at the same meeting. *Id*. at Pg:172, Ln:24 – Pg:173, Ln:1. Holding meetings is a basic tenet of the corporate experience and ignoring this formality is further evidence that the corporations serve only as an alter ego for Ms. Jambon.

### e. SHH's net negative income is a degree of undercapitalization

Undercapitalization is another factor that courts have used to pierce the corporate veil. *Riggins v. Dixie Shoring Co., Inc*., 590 So.2d 1164, 1168 (La. 1991). Although the precise definition of undercapitalization in this context has not been defined, the legislature instituted the corporate liability protections to encourage commerce and capital investment. *Regions Bank v. Ark-La-Tex Water Gardens*, 997 So.2d 734, 740 (La. App., 2008). Further, the mere fact that a corporation has remained operable does not prevent a court from piercing the corporate veil based on undercapitalization. *U.S. v. Clinical Leasing Service, Inc*., 982 F.2d 900, 904 (5th Cir., 1992) ("[T]he law does not provide that sustained corporate operations preclude a finding of undercapitalization.").

According to their financial reports, SHH's assets exceed their liabilities, but it has posted a significant loss of net income each year according to the financial statements. Ex. D (loss of $5,411.00 in 2015; loss of $7,099.00 in 2016; and loss of $25,757.00 in 2017). These losses hinder SHH's ability to engage in commerce or make capital investments. *Regions Bank*, 997 So.2d at 740. In fact, SHH's strategy of renting exclusively to Maples employees and at a rate below market value means it has virtually removed itself from the commerce realm entirely. Ex. C at 5. When the units are not rented to Maples employees, Ms. Jambon allows Maples customers to stay in the SHH apartments as a "perk" or lets her friends and family stay there free of charge, further removing SHH's sole income source from commerce. R. Doc. 115-4, Pg:86, Ln:18 – Pg:88, Ln:7.

Since the lack of income prevents engagement in commerce and puts the company at risk of becoming further undercapitalized, this satisfies another consideration for piercing the corporate veil.

**IV.    Conclusion**

Considering the totality of the circumstances surrounding Ms. Jambon's operation and use of Maples and SHH, it is appropriate to pierce the corporate veil and hold her personally liable for all the aforementioned reasons. Therefore, for the reasons set forth herein, Platiniffs respectfully request that this Court grant this Motion for Partial Summary Judgment.

Respectfully submitted,

VIVIAN PATZ and MICHAEL PATZ,

/s/ *William Most*
WILLIAM MOST
La. Bar No. 36914
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023

11

Email: williammost@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2018, a copy of the *Memorandum in Support of Motion for Partial Summary Judgment* was filed electronically with the Clerk of Court via the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

                                             _/s/ William Most_____
                                                 William Most