| | |
|---|---|
| **VIVIAN PATZ, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  17-3465** |
| **SUREWAY SUPERMARKET, ET AL.,**<br>    **Defendants** | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court are (1) a motion seeking partial summary judgment that Defendant Shelly Jambon may be held personally liable as a result of the corporate veil between her and certain companies being pierced, filed by Plaintiffs Vivian Patz and Michael Patz,[1] and (2) a motion seeking partial summary judgment that Jambon may not be held personally liable based on her being an employer or landlord of the Plaintiffs, filed by Jambon.[2] The motions are opposed.[3]

## FACTUAL & PROCEDURAL BACKGROUND[4]

Jambon states it is an undisputed fact that she was not the employer of Vivian Patz or Michael Patz, and, as a result, cannot personally be held liable for employment discrimination.[5] Plaintiffs dispute this, but argue only that Maples is "merely an alter ego of Shelly Jambon."[6] Plaintiffs in effect admit Jambon did not personally employ Vivian Patz or Michael Patz, but argue she can nevertheless be personally liable if the Court pierces the corporate veil between Maples and her. As a result, it is uncontested that Jambon did not personally employ Vivian Patz and Michael Patz. Instead, Plaintiffs

---

[1] R. Doc. 127.
[2] R. Doc. 68.
[3] R. Docs. 71, 120, 135.
[4] Unless otherwise noted, the facts in this section are undisputed.
[5] R. Doc. 68-2 at 2, ¶ 6.
[6] R. Doc. 120-1 at 2, ¶ 6.

Vivian and Michael Patz were employees of Defendant Walter H. Maples, Inc. ("Maples"), doing business as Sureway Supermarket.[7] SHH Properties, LLC ("SHH") owns the property at 176 Nacarri Lane,[8] and leases it to Maples which in turn leases the property to its employees.[9] Jambon is the sole shareholder of Maples, which employs more than fifteen people,[10] and the sole member of SHH.[11] The parties dispute whether Maples fired them in April, 2016 because Vivian Patz was pregnant and whether the Plaintiffs were evicted from their employer-provided apartment at 176 Naccari Lane because of the pregnancy.[12]

On April 14, 2017, Plaintiffs filed suit against Maples, SHH, and Jambon individually.[13] On April 19, 2018, Plaintiffs filed their Second Amended Complaint.[14] In the Second Amended Complaint, Vivian Patz brings three counts for employment discrimination: (1) violation of Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act ("Title VII"),[15] against Maples only; (2) violation of the Americans with Disabilities Act ("ADA") against Maples and Jambon;[16] (5) violation of the Louisiana Employment Discrimination Law ("LEDL") against Maples and Jambon.[17]

---

[7] R. Doc. 133 at 6, ¶ 7(a) (joint listing of uncontested facts).

[8] R. Doc. 68-1 at 1, ¶ 4; R. Doc. 120-1 at 1, ¶ 4.

[9] R. Doc. 133 at 6, ¶ 7(d).

[10] *Id.* at ¶ 7(h).

[11] *Id.* at ¶ 7(e). The attachments to the instant motion show officers and members of SHH other than Jambon, R. Doc. 68-6, but the Court accepts the parties' uncontested statement of fact that Jambon is the only *owner* of SHH.

[12] R. Doc. 59 at 1–2; R. Doc. 64 at 1–2.

[13] R. Doc. 1.

[14] R. Doc. 59.

[15] 42 U.S.C. § 2000e.

[16] *Id.* at § 12101 *et seq.*

[17] LA. REV. STAT. 23:301 *et seq.* In the First Amended Complaint, both Plaintiffs brought these claims against Jambon and Maples. R. Doc. 17. The First Amended Complaint also lists SHH as a Defendant for the LEDL claim. *Id.* In a letter from Plaintiff's counsel filed on the record on January 18, 2018, counsel clarified Plaintiffs are not suing SHH under the LEDL. R. Doc. 30. The Court subsequently dismissed Michael Patz's claims under the LEDL. R. Doc. 47.

      According to the Second Amended Complaint, Vivian Patz brings the Title VII claim against only Maples but the ADA and LEDL claims against both Maples and Jambon. R. Doc. 59. However, Plaintiffs' opposition to the instant motion states "Jambon is liable under . . . Title VII." R. Doc. 120 at 12. The Court addresses herein Jambon's liability under Title VII, ADA, and the LEDL.

Vivian Patz and Michael Patz bring the following counts against all Defendants: (3) violation of the FHA,[18] (6) breach of contract, (7) trespass, and (8) violation of the Louisiana Unfair Trade Practices Act ("LUTPA").[19]

On June 8, 2018, Jambon filed a motion for partial summary judgment that she is not personally liability on any claims made against her individually.[20] She argues that, because she personally was not the Plaintiffs' employer or landlord, she cannot be held personally liable on any claims.[21] On July 1, 2018, Plaintiffs filed their opposition, raising for the first time the issue of Jambon's personal liability by virtue of piercing the corporate veil.[22] Plaintiffs contended that additional discovery was necessary to address the issues raised in Jambon's motion, as well as the issue of piercing the corporate veil.[23] The Court permitted Plaintiffs to file a supplemental opposition to Jambon's motion after the close of discovery.[24] On November 13, 2018, Plaintiffs filed their supplemental opposition.[25] Jambon filed a reply addressing the issue of piercing the corporate veil.[26]

On November 26, 2018, Plaintiffs filed a motion for partial summary judgment motion squarely addressing the issue of Jambon's personal liability by virtue of piercing the corporate veil.[27] Jambon moves to strike the Plaintiffs' motion as untimely.[28] The

---

[18] 42 U.S.C. § 3601 *et seq.*
[19] LA. REV. STAT. 51:1401 *et seq.*
The Court previously granted summary judgment for Defendants on Count 4, which Plaintiffs brought under the Residential Lead-Based Paint Hazard Reduction Act. R. Doc. 97.
[20] R. Doc. 68.
[21] R. Doc. 68-1. The motion does not address the issue of Jambon's personal liability based on piercing the corporate veil between Maples, SSH and Jambon.
[22] R. Doc. 71 at 5.
[23] *Id.* at 6.
[24] R. Doc. 80.
[25] R. Doc. 120.
[26] R. Doc. 124.
[27] R. Doc. 127.
[28] R. Doc. 128.

Court exercises its discretion to control its own docket,[29] denies Jambon's motion to strike, and considers the merits of Plaintiffs' motion.[30]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] "An issue is material if its resolution could affect the outcome of the action."[32] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[33] All reasonable inferences are drawn in favor of the non-moving party.[34] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[35]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the

---

[29] *See Edwards v. Cass Cty., Tex.*, 919 F.2d 273, 275 (5th Cir. 1990).
[30] The Court denies Jambon's motion to strike Plaintiffs' motion for partial summary judgment. R. Doc. 128.
[31] Fed. R. Civ. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[32] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[33] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[34] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[35] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[36]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[37] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[38] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[39] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[40]

---

[36] *Celotex*, 477 U.S. at 322–24.
[37] *Id*. at 331–32 (Brennan, J., dissenting).
[38] *See id*. at 332.
[39] *Id*. at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id*. at 332–33, 333 n.3.
[40] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Pursuant to Rule 56(f), "[a]fter giving notice and a reasonable time to respond, the court may (1) grant summary judgment for a nonmovant [or] (2) grant the motion on grounds not raised by a party." Notice is sufficient when a party has "full opportunity to argue . . . and present whatever relevant evidence."[41]

## LAW AND ANALYSIS

### I. Jambon's Motion for Partial Summary Judgment on Her Personal Liability as An Employer or a Landlord

It is undisputed that Plaintiffs were employees of Maples[42] and that Plaintiffs lived at 176 Naccari Lane, which is owned by SHH.[43] There is no dispute that SHH was the owner, Maples was the sublessor, and Plaintiffs were sublessees of the property at 176 Naccari Lane.[44] Jambon provided checks showing monthly rental payments from Maples to SHH.[45] According to financial statements filed by Plaintiffs in connection with their motion for partial summary judgment, Maples lists the rent payments under "Operating Expenses,"[46] and SHH lists the rental income in its income statements.[47] According to the declaration of Vivian Patz, each time she received a paycheck from Maples, she took the check to a register in Sureway Supermarket and received "cash that equaled [the] paycheck less rent."[48] She included a photograph of a rent receipt attached to a paystub.[49] Denise Esponge, a Maples employee, confirmed at deposition that this is the general procedure Maples follows for collecting rent on employer-provided housing.[50]

---

[41] *Atkins v. Salazar*, 677 F.3d 667, 681 (5th Cir. 2011).
[42] R. Doc. 133 at 6, ¶ 7(a).
[43] R. Doc. 68-2 at 1, ¶ 4; R. Doc. 120-1 at 1, ¶ 4. Defendants attached the land sale contract as an exhibit to the instant motion. R. Doc. 68-7.
[44] This is corroborated by Vivian Patz's allegation that she had never heard of SHH prior to the instant suit. R. Doc. 71-2 at 3, ¶ 15.
[45] R. Doc. 135-2.
[46] R. Doc. 127-7 at 13.
[47] *Id.* at 3, 6, 9.
[48] R. Doc. 71-2 at 3, ¶ 16.
[49] *Id.* at 4, ¶ 16.
[50] R. Doc. 115-5 at 46:2–50:17.

A. Title VII

In the Second Amended Complaint, Vivian Patz brings claims under the ADA, and the LEDL against Jambon and Maples for terminating her on the basis of her pregnancy.[51] Vivian Patz brings her Title VII claim against only Maples and not against Jambon.[52] However, Jambon's motion for summary judgment and Plaintiffs' opposition assume Vivian Patz also brings her Title VII claim against Jambon.[53] The Court addresses the parties' arguments as though Vivian Patz had brought her Title VII claim against Jambon.

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."[54] The Fifth Circuit has held that, although Title VII's definition of "employer" includes "any agent" of an employer, employees of a corporation are not individually liable under Title VII.[55] Congress's purpose in including 'any agent' in the definition of employer "was merely to import *respondeat superior* liability into Title VII," making an employer liable for the actions of its employees.[56] "Further, a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent"[57] because imposing

---

[51] R. Doc. 59.

[52] *Id.*

[53] R. Doc. 68-1 at 3–5; R. Doc. 120 at 12–13.

[54] 42 U.S.C. § 2000e(b). Plaintiffs bring their Title VII claim under The Pregnancy Discrimination Act. 42 U.S.C. § 2000e(k.) This Act was amended to define "because of sex" or "on the basis of sex" to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." The Pregnancy Discrimination Act did not amend the definition of employer found in § 2000e(b).

[55] *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) ("[T]his circuit does not interpret the statute as imposing individual liability for such a claim.") (citing *Pfau v. Reed*, 125 F.3d 927, 935–36 (5th Cir.1997)).

[56] *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002) (citing *id.*; *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir.1994)).

[57] *Id.*

liability on an employer and its agent would effectively hold the employer "liable twice for the same act."[58]

It is undisputed that Vivian Patz was an employee of Maples, which employs more than fifteen people.[59] Because there is no individual liability of employees under Title VII, Vivian Patz cannot subject Jambon to individual liability as an employee of Maples. Because Vivian Patz brings a Title VII claim against Maples, and she is not entitled to maintain a Title VII action against her employer and its agent in an official capacity, she cannot subject Jambon to personal liability as an agent of Maples. Accordingly, even if Vivian Patz had brought a Title VII claim against Jambon individually, there are no disputed material facts and Jambon is entitled to judgment in her favor as a matter of law on the claim.

B. ADA

Title I of the ADA, which covers employment discrimination, includes a definition of "employer" that is, in relevant part, identical to the definition found in Title VII.[60] "Although neither the Supreme Court nor the Fifth Circuit have explicitly considered whether individuals may be held liable under Title I of the ADA, several circuit courts have concluded that individuals [acting on behalf of an employer] may not be held liable [as employers] under the ADA . . . Moreover, the district courts within the Fifth Circuit that have considered the issue have similarly concluded that there is no individual liability under the ADA."[61] In light of the similarity between the language of Title I of the ADA and

---

[58] *Indest*, 164 F.3d at 262 (quoting *Allen v. Tulane Univ.*, No. CIV.A.92-4070, 1993 WL 459949 (E.D.La. Nov.2, 1993)).

[59] R. Doc. 133 at 6, ¶¶ 7(a), (h).

[60] *Compare* 42 U.SC. § 2000e(b) *to* 42 U.S.C.A. § 12111(5)(a). *See Kacher v. Houston Cmty. Coll. Sys.*, 974 F. Supp. 615, 619 (S.D. Tex. 1997) ("The ADA's definition of 'employer' mirrors the definitions of 'employer' in Title VII of the Civil Rights Act of 1964.") (citing *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–80 (7th Cir.1995)).

[61] *Franklin v. City of Slidell*, 928 F. Supp. 2d 874, 881–82 (E.D. La. 2013) (collecting cases).

the language of Title VII, this Court holds individuals acting on behalf of employers are not subject to personal liability as employers under Title I of the ADA. In the instant case, Jambon was an individual acting on behalf of Maples. As a result, she is not subject to liability as an employer under Title I of the ADA. There are no material facts in dispute, and Jambon is entitled to judgment as a matter of law on this claim.

C. LEDL

The LEDL defines "employer" as "a person . . . receiving services from an employee and, in return, giving compensation of any kind to an employee."[62] "In determining whether an employer gave compensation, factors to consider include: who paid the employee's wages; who withheld federal, state, unemployment, or social security taxes; whether the employee's name appeared on the employer's payroll; and whether the employee participated in the employer's benefit plans. Central to the determination of whether one is an employer for purposes of the LEDL is whether the defendant paid the plaintiff's wages and withheld federal, state, unemployment, or social security taxes from his check."[63]

Jambon states it is an undisputed fact that she did not individually receive services from Vivian Patz in return for which she gave compensation.[64] Plaintiffs dispute this but offer only the argument that Maples is Jambon's alter ego.[65] This is an admission that Jambon did not individually receive services from Vivian Patz in return for which she gave compensation. There is no genuine dispute that Maples, not Jambon, was Vivian Patz's

---

[62] La. Rev. Stat. 23:302.
[63] *Dejoie v. Medley*, 2008-2223 (La. 5/5/09), 9 So. 3d 826, 830.
[64] R. Doc. 68-2 at 2, ¶ 7.
[65] R. Doc. 120-1 at 2, ¶ 7.

employer[66] and that Maples, not Jambon, paid her. As a result, Jambon is entitled to summary judgment on Vivian Patz's LEDL claim against her.

D. FHA

Plaintiffs bring a claim under the FHA against all Defendants for discriminating against them on the basis of familial status in terminating their lease.[67] The FHA forbids discrimination based on familial status, which includes pregnancy, in renting a dwelling.[68] Jambon argues that, because Jambon is not personally the owner of the property at 176 Naccari Lane, she cannot be subjected to personal liability for the actions she took on behalf of Maples or SHH in connection with the property at 176 Naccari Lane.[69]

"[A]n action brought [under the FHA] for compensation by a victim of housing discrimination is, in effect, a tort action."[70] Under traditional vicarious liability rules, "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents."[71] In *Meyer v. Holley*, the Supreme Court held owners and officers of a corporation cannot be held liable for the corporation's FHA violations "if they did not direct or authorize, and were otherwise not involved in, the unlawful discriminatory acts."[72]

---

[66] R. Doc. 133 at 6, ¶ 7(a), (h).
[67] R. Doc. 59 at 13–14, ¶¶ 90–96.
[68] 42 U.S.C. § 3604(a), (k).
[69] R. Doc. 68-1 at 3–6.
[70] *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (citing *Curtis v. Loether*, 415 U.S. 189, 195–96 (1974)).
[71] *Id.* at 286.
[72] *Id.* at 284.

*Meyer* does not address the personal liability of an individual acting on behalf of a corporation when the individual personally performs discriminatory acts.[73] In *Dillon v. AFBIC Dev. Corp.*, the vice president and sole shareholder of a corporation acting as a real estate agent assisted a seller in a racially motivated refusal to sell a home to a Black couple.[74] The Fifth Circuit found the vice president and sole shareholder liable, not because he was an executive and owner, but instead because his "own conduct violated the federal antidiscrimination statutes."[75]

Jambon states it is an undisputed fact that she "did not personally tell [Plaintiffs] to vacate" the property at 176 Naccari Lane.[76] Plaintiffs dispute this, citing Vivian Patz's declaration, in which Vivian Patz testifies that Jambon personally told her to leave the apartment.[77] The Court finds there are genuine factual disputes with respect to whether Jambon personally told Plaintiffs to leave the apartment.[78] Plaintiffs base their FHA claim on Jambon's alleged conduct in connection with the alleged eviction.[79] As a result, Jambon may be liable under the FHA, not as an owner of Maples and SHH or a member of SHH, but rather in her personal capacity for her own acts. Material facts are in dispute and Jambon is not entitled to judgment as a matter of law on Plaintiffs' FHA claim against her.

---

[73] *Chavez v. Aber*, 122 F. Supp. 3d 581, 594 (W.D. Tex. 2015) ("The decision in Meyer, however, in no way stands for the proposition that the FHA does not impose personal liability on a corporate officer with fault for that officer's own unlawful conduct.").

[74] 597 F.2d 556, 562 (5th Cir. 1979).

[75] *Id.*

[76] R. Doc. 68-2 at 2, ¶ 11.

[77] R. Doc. 120-1 at 2, ¶ 11.

[78] R. Doc. 59 at 7, ¶¶ 45, 48; R. Doc. 64 at 4, ¶¶ 45, 48.

[79] R. Doc. 59 at 14, ¶ 95.

E.  Breach of Contract and Trespass

Jambon states it is an undisputed fact that she does not own the property at 176 Naccari Lane.[80] Plaintiffs dispute this, alleging Maples is "merely an alter ego of Shelly Jambon."[81] Plaintiffs in effect admit Jambon did not own the property at 176 Naccari Lane because they argue only that she can nevertheless be liable if the Court pierces the corporate veil. It is uncontested that Jambon did not own the property at 176 Naccari Lane. SHH was the owner-lessor of the property at 176 Naccari Lane, Maples was the lessee-sublessor, and Plaintiffs were sublessees. There was no written sublease between Plaintiffs and Maples.[82] It is undisputed that Plaintiffs were not provided with an eviction notice before they vacated the apartment.[83]

Plaintiffs argue they were wrongfully evicted.[84] On that basis, they bring a breach of contract claim and a trespass claim against all Defendants.[85] Jambon argues that, because she was not Plaintiffs' landlord and was not a party to the lease contract, she is entitled to judgment as a matter of law on these claims.[86]

Under Louisiana law, "no privity of contract exists between the owner-lessor and the sublessee [of immovable property]. A sublessee derives occupancy rights from the sublease covering the rented premises."[87] Plaintiffs bring their breach of contract claim for breach of the oral sublease between them and Maples. Jambon was not a party to the

---

[80] R. Doc. 68-2 at 1, ¶ 5.
[81] R. Doc. 120-1 at 2, ¶ 5.
[82] R. Doc. 71-5 at 5.
[83] R. Doc. 59 at 7, ¶ 44; R. Doc. 64 at 4, ¶ 44.
[84] R. Doc. 59 at 16–18, ¶¶ 117–31.
[85] *Id.*
[86] R. Doc. 68-1 at 8–9.
[87] *Sauer v. Toye*, 616 So. 2d 207, 211 (La. Ct. App. 1993) (citing *Bourgeois, Dupuis, Wright & Cohen v. Hayes*, 457 So. 2d 231, 234 (La. Ct. App. 1984), *writ denied sub nom. Bourgeois, Dupuis, Wright, & Cohen Certified Pub. Accountants v. Hayes*, 461 So. 2d 315 (La. 1984)).

contract. Because she cannot be held liable under the contract, Jambon is entitled to judgment as a matter of law on Plaintiffs' breach of contract claim.

Lessors who fail to follow eviction procedures required by law are liable for trespass.[88] The right to evict arises from the lease contract.[89] Plaintiffs, as sublessees, were in privity of contract only with Maples, the sublessor. Maples was the only party with the right to evict Plaintiffs and the duty to follow the required eviction procedures. Jambon cannot be held liable for wrongful eviction or trespass arising from wrongful eviction. As a result, there are no material facts in dispute and Jambon is entitled to judgment as a matter of law on Plaintiffs' trespass claim.

### F. LUTPA

It is uncontested that Jambon was not Plaintiffs' employer or landlord. Plaintiffs bring a LUTPA claim against all Defendants, alleging Defendants "violated the Louisiana Unfair Trade Practices Act when they fired [Vivian Patz], refused to accommodate her disability, illegally evicted her and [Michael Patz] . . . used threats of involving law enforcement, and barred them from the only grocery store in Grand Isle."[90] They allege Defendants violated LUTPA when they "deceived Vivian into believing she could keep her job if she obtained a doctor's note."[91]

LUTPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[92] "A trade practice is unfair under the statute only when it offends established public policy and is immoral, unethical,

---

[88] *See Fo-Coin Co. v. Drury*, 349 So. 2d 382, 384 (La. Ct. App. 1977) ("When a lessor takes the law in his hands by unlawfully dispossessing a tenant, he commits a trespass and is liable for general damages."); *Weber v. McMillan*, 285 So. 2d 349, 352 (La. Ct. App. 1973), *writ denied*, 288 So. 2d 357 (La. 1974).

[89] Because there is no privity of contract between an owner-lessor and a sublessee, an owner-lessor cannot evict a sublessee unless it establishes "the dissolution or termination of the primary lease covering the rented premises" between the owner-lessor and the lessee-sublessor. *Sauer*, 616 So. 2d at 211.

[90] R. Doc. 59 at 18, ¶ 136.

[91] *Id.* at 18–19, ¶ 137.

[92] LA. REV. STAT. 51:1405(A).

oppressive or unscrupulous. What constitutes an unfair trade practice is determined by the courts on a case-by-case basis."[93]

In *Industrias Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc.*, a jury found that, when the chairperson of the board of the corporate defendant negotiated and signed a contract on behalf of the corporation, he did not personally obligate himself under the contract, but he did engage in unfair trade practices in the course of contract negotiations.[94] The Fifth Circuit found the chairperson was "acting as an agent when the contract negotiations took place."[95] After finding that the chairperson's "actions, as a matter of law, do not warrant piercing the corporate veil," the Fifth Circuit held he "is protected from LUTPA liability by his status as an agent."[96]

Similarly, in the instant case, Plaintiffs base their LUTPA claim against Jambon on actions she took on behalf of Maples and SHH.[97] Jambon was not personally Plaintiffs' employer or landlord. Like the chairperson of the board in *Industrias Magromer*, Jambon was acting as an agent of Maples and SHH. Because, as explained below, piercing the corporate veil is not warranted, Jambon is protected from LUTPA liability by her status as an agent. As a result, Jambon is entitled to judgment as a matter of law on Plaintiffs' LUTPA claim against her.

## II.   Plaintiffs' Motion for Partial Summary Judgment on Piercing the Corporate Veil

Plaintiffs raise the issue of piercing the corporate veil initially in their opposition to Jambon's motion for partial summary judgment that she is not personally liable

---

[93] *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) (citations omitted).
[94] 293 F.3d 912, 920 (5th Cir.), *decision clarified on denial of reh'g*, 310 F.3d 786 (5th Cir. 2002).
[95] *Id.*
[96] *Id.*
[97] R. Doc. 59 at 18, ¶ 136.

because she is neither the Plaintiffs' employer nor landlord.[98] Jambon addresses the issue of piercing the corporate veil in her reply, but does not move for summary judgment on the issue.[99]

Plaintiffs later filed a motion for partial summary judgment that Jambon is personally liable to them because the corporate veil between her and Maples and SSH has been pierced. Plaintiffs' partial summary judgment motion squarely addresses the issue of piercing the corporate veil,[100] as does Jambon's opposition to Plaintiffs' motion.[101]

Although Jambon has not moved for partial summary judgment in her favor on this issue of piercing the corporate veil, both she and the Plaintiffs are on notice and have had a full opportunity to make arguments and present evidence relevant to the issue. Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the Court may *sua sponte* enter summary judgment for Jambon, the nonmoving party, on the issue of piercing the corporate veil.

The following facts are undisputed. Jambon is the sole owner of both Maples and SSH[102] and she holds joint meetings of Maples and SSH.[103] Jambon directs Maples employees to perform maintenance work at her home.[104] SSH has had a negative income in 2015, 2016, and 2017.[105] Plaintiffs state it is undisputed that Maples does not hold regular business meetings.[106] Jambon responds that she testified that Maples does not

---

[98] R. Doc. 71 at 5.
[99] R. Doc. 124.
[100] R. Doc. 127.
[101] R. Doc. 135.
[102] R. Doc. 127-3 at 1, ¶ 2; R. Doc. 135-3 at 1.
[103] R. Doc. 127-3 at 2, ¶ 8; R. Doc. 135-3 at 2.
[104] R. Doc. 127-3 at 2, ¶ 11; R. Doc. 135-3 at 3.
[105] R. Doc. 127-3 at 2, ¶ 10; R. Doc. 135-3 at 2.
[106] R. Doc. 127-3 at 2, ¶ 12.

hold "*formal* meetings" and has not held a formal meeting since 2010.[107] It is undisputed that Jambon holds joint meetings with the mutual CPA for Maples and SSH.[108]

Citing the deposition testimony of Maples employee Esponge, Plaintiffs argue it is undisputed that Jambon directs Esponge to post eviction notices and perform maintenance work at SHH properties while being compensated by Maples.[109] Jambon disputes this assertion and argues that, when Esponge performs work at SHH properties, she does so on behalf of Maples, which leases the properties from SHH.[110] In support, Jambon cites checks from Maples to SHH and SHH's financial statements.[111] In her deposition, Esponge stated she does not work for SHH and that she posts eviction notices at SHH properties because the employees of Maples, the sublessor, live at those properties.[112] After reviewing Esponge's deposition testimony, the Court finds it is undisputed that Esponge's work is done on behalf of her employer Maples.

Under Louisiana law, the general rule is that "corporations are distinct legal entities, separate from the individuals who comprise them, and that the shareholders are not liable for the debts of the corporation."[113] In some cases, "[a] court may "pierce the corporate veil" and hold individual shareholders liable."[114]

Plaintiffs argue the Court should pierce the corporate veil with respect to Jambon's liability for federal and state law claims.[115] The Court initially addresses whether to apply

---

[107] R. Doc. 135-3 at 3 (emphasis in the original).
[108] *Id.* at 2.
[109] R. Doc. 127-3 at 1, ¶ 5 (citing R. Doc. 115-5 at 58:19–59:8). Plaintiffs also state it is undisputed that Jambon directs Maples employee David Felarise to post eviction notices and perform maintenance work at SHH properties while being compensated by Maples, *id.* at 2, ¶ 7, but, in support, they cite to a page in Esponge's deposition that does not exist. Esponge's deposition testimony does not mention David Felarise. R. Doc. 115-5. As a result, the Court does not consider this factual allegation.
[110] *Id.* at 2.
[111] *Id.*
[112] R. Doc. 115-5 at 58:24–25.
[113] *Riggins v. Dixie Shoring Co.*, 590 So.2d 1164, 1167 (La. 1991).
[114] *Id.*
[115] R. Doc. 127.

federal common law or Louisiana law governing piercing the corporate veil. The Supreme Court has noted "significant disagreement among courts and commentators over whether, [in the case of another federal statute], courts should borrow state law, or instead apply a federal common law of veil piercing."[116] The Supreme Court did not resolve the issue.[117] "The Fifth Circuit has repeatedly declined to address whether, as a matter of federal common law, courts in this Circuit should apply federal or state law when adjudicating a veil piercing claim."[118]

At federal common law, "[t]he alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases."[119] The doctrine applies "only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil."[120] Under Louisiana law, "[p]iercing the corporate veil is considered a radical remedy,"[121] and "the principle that the corporation is a separate entity should be disregarded only in exceptional circumstances."[122] A court may pierce the corporate veil and hold individual shareholders liable when "fraud or deceit has been practiced by the shareholder acting through the corporation [or] when the shareholders disregard the requisite corporate formalities to the extent that the corporation ceases to

---

[116] *United States v. Bestfoods*, 524 U.S. 51, 64 n.9 (1998)

[117] *Id.*

[118] *In re TK Boat Rentals, LLC*, No. CV 17-1545, 2018 WL 1604905, at *3 (E.D. La. Apr. 3, 2018) (citing *United States v. Jon−T Chems., Inc.*, 768 F.2d 686, 690 n. 6 (5th Cir.1985*); Century Hotels v. United States*, 952 F.2d 107, 110 n. 4 (5th Cir.1992); *In re Sims*, 994 F.2d 210, 218 n. 11 (5th Cir.1993)).

[119] *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (citing *In re Multiponics, Inc.*, 622 F.2d 709, 724−25 (5th Cir.1980)).

[120] *Id.*

[121] *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 2009-1433 (La. App. 4 Cir. 5/26/10), 40 So. 3d 394, 407, *writ denied*, 2010-1475 (La. 10/1/10), 45 So. 3d 1100 (quoting *Town of Haynesville, Inc., v. Entergy Corp.*, 42,019, p. 10 (La.App. 2 Cir. 5/2/07), 956 So.2d 192, 198),

[122] *Sea Tang Fisheries, Inc. v. You'll See Sea Foods, Inc.*, 569 So. 2d 992, 995 (La. Ct. App. 1990), *writ denied*, 572 So. 2d 89 (La. 1991).

be distinguishable from its shareholders."[123] "Because state and federal alter ego tests are essentially the same, [the Fifth Circuit's] non-diversity alter ego cases apply state and federal cases interchangeably."[124]

The Court applies Louisiana law governing piercing the corporate veil. Under Louisiana law, "the shareholders or members have the initial burden of showing the corporate existence, and defendants carry this burden by use of the corporate charter and other documents. The burden then shifts to the plaintiff to show the exceptional circumstances which must exist in order for the corporate veil to be pierced and individual shareholders or members held liable for a corporate debt."[125] Jambon has produced documents from the Louisiana Secretary of State proving the existence of Maples[126] and SHH.[127] Plaintiffs "bear a heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves."[128] The Louisiana Supreme Court has enumerated the following factors in determining whether to apply the alter ego doctrine:

1) commingling of corporate and shareholder funds;
2) failure to follow statutory formalities for incorporating and transacting corporate affairs;
3) undercapitalization;
4) failure to provide separate bank accounts and bookkeeping records; and
5) failure to hold regular shareholder and director meetings.[129]

---

[123] *Riggins*, 590 So. 2d at 1168.
[124] *In re TK Boat Rentals, LLC*, 2018 WL 1604905, at *3 (quoting *Century Hotels*, 952 F.2d 110 n.4) (internal quotation marks and ellipsis omitted). *Compare United States v. Clinical Leasing Serv., Inc.*, 982 F.2d 900, 902 (5th Cir. 1992) (applying Louisiana veil-piercing law to a case arising under the Federal Controlled Substances Act) *with Selser v. Pac. Motor Trucking Co.*, 770 F.2d 551, 554 (5th Cir. 1985) (applying federal common law to a case arising under the Federal Employers' Liability Act).
[125] *McDonough Marine Serv., a Div. of Marmac Corp. v. Doucet*, 95-2087 (La. App. 1 Cir. 6/28/96), 694 So. 2d 305, 309 (citation omitted).
[126] R. Doc. 68-4.
[127] R. Doc. 68-6.
[128] *Riggins*, 590 So. 2d at 1168 (citing *Chaney v. Godfrey*, 535 So.2d 918 (La.App. 2d Cir.1988); *American Bank of Welch v. Smith Aviation, Inc.*, 433 So.2d 750 (La.App. 3d Cir.1983)).
[129] *Id.*

Plaintiffs argue that in this case these factors weigh in favor of piercing the corporate veil as to Maples and SSH.[130]

Plaintiffs argue Jambon, Maples, and SHH commingle funds because Jambon directs Maples employees to perform work at SHH properties and at her home and because Maples takes rental payments for SHH tenants from Maples paychecks and provides certain Maples customers SHH apartments free of charge.[131] Maples and SHH have separate financial statements[132] and maintain separate bank accounts, as shown by the checks Maples makes out to SHH.[133] Although SHH rents solely to Maples,[134] SSH keeps track of its income separately, as shown in its income statements.[135] Jambon's directing Maples employees to perform work at SHH properties that Maples leases or allowing Maples customers to live at those properties does not indicate a commingling of the funds of Maples and SHH. Nor does Maples' collecting rent for apartments it subleases to employees constitute commingling of funds. The deposition testimony of Maples employee Esponge shows that Maples deposits rent payments on its subleases into its own bank account and makes separate rent payments to SHH.[136]

Plaintiffs argue SHH is undercapitalized.[137] Instead of analyzing SHH's capitalization based on established financial metrics or comparing SHH's assets, liabilities, and equity, Plaintiffs base their claim that SHH is undercapitalized solely on

---

[130] Piercing the corporate veil applies to SHH, which is a limited liability company, as well as to Maples. *See Prasad v. Bullard*, 10-291 (La. App. 5 Cir. 10/12/10), 51 So. 3d 35, 40 n.1 ("The theory of piercing the corporate veil applies to limited liability companies and is not limited to corporations.") (citing *ORX Resources, Inc. v. MBW Exploration, LLC, 09–662*, p. 7 (La.App. 4 Cir. 2/10/10), 32 So.3d 931, 935, *writ denied*, 10–530 (La.5/7/10), 34 So.3d 862).

[131] R. Doc. 120 at 8–9.

[132] R. Doc. 127-7.

[133] R. Doc. 68-7.

[134] R. Doc. 71-6 at 2.

[135] R. Doc. 127-7 at 3, 6, 9.

[136] R. Doc. 115-5 at 61:9–11.

[137] R. Doc. 120 at 11–12.

the fact that SHH has operated with negative income.[138] Negative income alone is insufficient to show a corporation is undercapitalized. In *Harris v. Best of Am. Inc.*, although the "federal tax return show[ed] capital of $200.00, while gross receipts for the year total[ed] over $1,200,000.00, and . . . the tax return showed a loss, [and] the corporation paid [its sole shareholder] over $100,000.00 in salary for the year," a Louisiana appellate court found the circumstances not "serious or exceptional so as to warrant piercing the corporate veil."[139] SHH's purported undercapitalization does not rise to the level of undercapitalization of the corporation in *Harris*.

Plaintiffs also question the soundness of SHH's business decision to rent solely to Maples.[140] In order to determine whether to pierce the corporate veil, the Court need not evaluate the merits of SHH and Maples' business practices. Plaintiffs have not shown SHH and Maples commingle corporate and shareholder funds or that SHH is undercapitalized. SHH and Maples maintain separate bank accounts and bookkeeping records. Although Plaintiffs' allegation that Maples and SHH do not hold regular, separate shareholder and director meetings,[141] if true, weighs in favor of piercing the corporate veil, the other factors weigh against piercing the corporate veil.

The Court finds, based on the undisputed facts and the evidence filed in the record, the Plaintiffs cannot meet the heavy burden of showing the exceptional remedy of piercing the corporate veil is merited in this case. The Court denies Plaintiffs' motion for partial summary judgment on the issue of piercing the corporate veil. Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the Court finds Jambon is entitled to summary judgment on the issue of piercing the corporate veil.

---

[138] *Id.* at 11.
[139] 466 So. 2d 1309, 1316 (La. Ct. App.), *writ denied*, 470 So. 2d 121 (La. 1985).
[140] R. Doc. 120 at 11.
[141] *Id.* at 10–11.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion for summary judgment filed by Defendant Shelly Jambon on the issue of her personal liability as an employer or landlord be and hereby is **DENIED IN PART** as to Plaintiffs' claim under the Fair Housing Act and **GRANTED IN PART** as to all other claims.[142] Judgment as a matter of law is granted in favor of Shelly Jambon and against the Plaintiffs on their claims against her under Title VII, ADA, LEDL, breach of contract, trespass, and LUTPA.

**IT IS FURTHER ORDERED** that the motion for partial summary judgment on the issue of Shelly Jambon's personal liability as a result of piercing the corporate veil be and hereby is **DENIED** as to Plaintiffs Vivian Patz and Michael Patz and **GRANTED** as to Defendant Shelly Jambon.[143] Judgment as a matter of law is granted in favor of Shelly Jambon and against the Plaintiffs on the issue of her personal liability as a result of piercing the corporate veil between her and Maples and SHH.

**IT IS FURTHER ORDERED** that the motion to strike filed by Defendant Shelly Jambon be and hereby is **DENIED**.[144]

**New Orleans, Louisiana, this 26th day of December, 2018.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[142] R. Doc. 68.
[143] R. Doc. 127.
[144] R. Doc. 128.