## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VIVIAN PATZ and MICHAEL PATZ, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No.: 2:17-cv-03465 |
| v. ) | |
| ) | Judge Susie Morgan |
| SUREWAY SUPERMARKET, *et al*., ) | Magistrate Janis Van Meerveld |
| ) | |
| Defendants. ) | |

### Supplemented Memorandum in Support of Plaintiff's Renewed Motion for Judgment as a Matter of Law or a New Trial

Now comes Plaintiff Vivian Patz to request relief under Fed. R. Civ. Pro. 50(b).[1]

During trial, Defendants conceded that on April 11, 2016, Vivian Patz told them that that she was pregnant, had a history of miscarriages, and could not lift more than ten pounds. All witnesses agreed that Vivian was sent home mid-shift without pay, told not to return without a doctor's note, and that there was no back-and-forth dialogue about accommodating Ms. Patz's needs.

At the close of evidence, Vivian Patz's counsel made an oral motion for judgment as a matter of law, on the basis that the evidence established several parts of her case.[2] Plaintiff here renews that motion regarding four parts of her case that the undisputed evidence proves:

1. A violation of Title VII and the Louisiana Pregnancy Discrimination Act ("La. PDA") because Defendants admittedly limited Ms. Patz's ability to work based on her pregnancy on April 11, 2016;[3]

2. A violation of the Americans with Disabilities Act ("ADA") for discrimination based

---

[1] Plaintiffs first requested relief under Fed. R. Civ. Pro. 50(b) on February 28, 2019, but noted that they would "supplement this brief with citations to the transcript of trial once that transcript is obtained." R. Doc. 162-1 at 1.

[2] R. Doc. 215 (Trial Transcript, January 30, 2019) at 537:1-538:2.

[3] *See, e.g.,* R. Doc. 213 (Trial Transcript, January 28, 2019) at 225:14-16 ("Q. When you sent Vivian home on April 11, 2016, was she sent home without pay? A. She was sent home without pay."); R. Doc. 214 (Trial Transcript, January 29, 2019) at 246:6-18, 247:21-24.

on a "regarded as" impairment;[4]

3.  A violation of the ADA for discrimination based on failure to make a reasonable accommodation; and

4.  A violation of the ADA because Defendants conceded they never engaged in the interactive process of seeking accommodation.[5]

None of these four require this Court to upset the jury's determination of the core disputed issue in this case – the reason for Ms. Patz's firing. Instead, taking Defendants' proffered reason for Ms. Patz's termination as a given, this motion shows how the *undisputed* facts laid out at trial lead to a finding for Plaintiff on certain other parts of her case.

Plaintiff thus renews her Rule 50(a) motions and requests that this Court grant a judgment as a matter of law or, in the alternative, a new trial.

## LEGAL STANDARD FOR JUDGMENT AS MATTER OF LAW OR A NEW TRIAL

Under Federal Rule of Civil Procedure 50(a)(2), a "motion for judgment as a matter of law may be made at any time before the case is submitted to the jury." The trial judge must direct a verdict if, under the governing law, there can be only one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby,* 477 U.S. 242, 251 (1986). If the court does not grant a Rule 50(a) made prior to submission of the case to the jury, the movant may renew the motion under Rule 50(b). Fed. R. Civ. Pro. 50. Under Federal Rule of Civil Procedure 50(b), the Court must find that "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the defendant on the specific issues raised.

In ruling on a renewed Rule 50 motion, the Court may direct the entry of judgment as a matter of law, or, in the alternative, order a new trial. Fed. R. Civ. Pro. 50(b)(2)-(3). The Court has

---

[4] *See, e.g.,* R. Doc. 217-4 ("Trial Exhibit 4, Vivian Patz's Personnel File").
[5] R. Doc. 214 at 244:2-5 ("Q. Did you have a back-and-forth dialogue with Vivian during that conversation on April 11th about what type of accommodations she might need? A. No."), 401:23-402:16.

broad discretion in granting new trials, and may set aside a verdict even though there is substantial evidence to support it. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) ("The authority to grant a new trial, moreover, is confided almost entirely to the exercise of discretion on the part of the trial court."); *Peterson v. Wilson*, 141 F.3d 573, 577 (5th Cir. 1998). On a motion for new trial, the court need *not* view the evidence in the light most favorable to the verdict winner. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc*. 563 F.3d 1358, 1371 (Fed. Cir. 2009); *U.S. ex rel Garibaldi v. Orleans Parish School Bd.*, 46 F. Supp. 2d 546, 552 (E.D. La. 1999). Thus, a motion for a new trial is a "much more lenient test" than for renewed judgment as a matter of law (Wright & Miller § 2531), and will not be upset upon appeal unless an abuse of discretion (*Jones v. Wal-Mart Stores, Inc.,* 870 F. 2d 982, 986 (5th Cir. 1989)).

## **UNDISPUTED EVIDENCE PRESENTED AT TRIAL**

Shelly Jambon, the sole owner of Defendant Walter H. Maples, Inc., testified that she initiated a conversation on April 11, 2016 with Vivian Patz when she found out that Vivian was not lifting objects in the store.[6] She testified that Vivian Patz told her four things in that conversation: (1) that she was or might be pregnant,[7] (2) that she had a history of miscarriages,[8] (3) could not lift more than ten pounds,[9] and (4) felt sick.[10] Likewise, the contemporaneous note written by Denise Esponge on April 11, 2016 stated: "Said she could not lift anything over 10 lbs because she was pregnant. Asked for a doctor's excuse – has not seen a doctor. Told her to go see one and bring excuse back."[11] Ms. Jambon and Ms. Esponge conceded that Ms. Patz did not ask

---

[6] R. Doc. 213 at 231:14-16.
[7] *Id*. at 231:20-24.
[8] *Id*. at 233:9-13.
[9] *Id*. at 231:25-232:6.
[10] *Id*. at 231:20-24.
[11] R. Doc. 217-4.

for time off; instead, was Ms. Jambon's order.[12]

As a result of that conversation, all witnesses with personal knowledge, including Ms. Patz, Ms. Jambon, and Ms. Esponge, testified that Ms. Patz was sent home mid-shift without pay and told not to return without a doctor's note.[13] Ms. Jambon testified that she asked Ms. Patz to not continue working, and that Ms. Patz was not given any accommodations for her job on April 11, 2018.[14] Ms. Jambon conceded that she did not engage in any back and forth dialogue about Ms. Patz's needs.[15]

Ms. Jambon and Lovie Verdin testified that Ms. Jambon instructed Ms. Verdin to submit the separation notice on April 15, 2016, after Ms. Verdin spoke on the phone with Ms. Patz.[16] Ms. Patz testified that she was not notified that she was terminated on that date.[17] Ms. Verdin testified that she did not call Ms. Patz back before filling out the separation notice.[18] Ms. Jambon testified that she never spoke to Ms. Patz on April 15, 2016 and never told Ms. Patz that she was fired.[19]

## LAW AND ARGUMENT

I.   **Plaintiff Vivian Patz is entitled to a judgment as a matter of law under Title VII and the Louisiana Pregnancy Discrimination Act because Defendants conceded that they limited Ms. Patz's ability to work by sending her home without pay on April 11, 2016.**

Under Title VII, it is unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any

---

[12] R. Doc. 214 at 247:21-24, 401:1-18.
[13] Vivian Patz (R. Doc. 213 at 112:2-9); Shelly Jambon (R. Doc. 213 at 225:14-16; R. Doc. 214 at 246:6-18, 247:21-24); Denise Esponge (R. Doc. 214 at 401:17-18, 404:24-405:1).
[14] *See, e.g.* R. Doc. 214 at 247:21-24.
[15] R. Doc. 214 at 244:2-5 ("Q. Did you have a back-and-forth dialogue with Vivian during that conversation on April 11th about what type of accommodations she might need? A. No.").
[16] Shelly Jambon (R. Doc. 214 at 277:5-15); Lovie Verdin (R. Doc. 214 at 432:6-435:13).
[17] R. Doc. 213 at 125:16-127:25, 162:15-16 ("Q. And so, you did not know you were terminated on the 15th? A. No, ma'am.").
[18] R. Doc. 214 at 435:3-13.
[19] *Id*. at 272:8-10.

individual of employment opportunities" if the employee's pregnancy was a "motivating factor." 42 U.S.C. 2000e-2(a)(2), (m).[20] Under this prohibition of Title VII, a plaintiff must prove: (1) she belonged to a protected class, (2) she suffered an adverse employment action, such as a "limit" on employment opportunities; and (3) that her pregnancy was at least one motivating factor among others in the adverse employment action.

Here, all three elements were uncontroverted at trial: Ms. Patz was pregnant, her employment opportunities were limited when they sent her home from work, and Defendants sent her home from work at least in part because she might be pregnant.[21]

1.  Undisputed testimony at trial established that Plaintiff Vivian Patz belonged to a protected class.

Pregnant people are a protected class under Title VII. 42 U.S.C. § 2000e(k). Here, the uncontroverted evidence at trial established that in April of 2016, Vivian Patz was pregnant. Vivian and Michael both testified that Vivian had taken multiple positive pregnancy tests in the early spring of 2016, well before she was sent home on April 11, 2016.[22] Additionally, Plaintiffs entered into evidence Kylie Patz's November 14, 2016 birth certificate.[23] No witness disputed that Vivian

---

[20] The Louisiana Pregnancy Discrimination Act has the same prima facie elements as Title VII. *Suire v. LCS Corr. Servs, Inc*., 930 So. 2d 221, 224 (La. App. 3 Cir. 2006) (Louisiana courts analyze cases under the Louisiana Pregnancy Discrimination Act following the analysis set forth in federal cases for discrimination under Title VII), *citing Brittain v. Family Care Serv., Inc*., 34,787, pp. 4-5 (La.App. 2 Cir. 6/20/01), 801 So.2d 457, 460-61).

[21] Here, because there is direct evidence of discrimination, there is no need to apply the *McDonnell Douglas* burden-shifting framework commonly applied in discrimination cases. The inquiry may proceed directly to the question of liability. *Stone v. Parish of East Baton Rouge*, 329 Fed. Appx. 542, 545 (5th Cir. 2009); *EEOC v. Danny's Restaurant*, 16-CV-00769, 2018 U.S. Dist. LEXIS 168641 (S.D.Miss. Sept. 30, 2018).

[22] R. Doc. 213 at 108:21-23 ("Q. How did you find out you were pregnant? A. I was having symptoms, and then so I went ahead and got several pregnancy tests, and every one came up positive."); R. Doc. 214, 455:7-10.

[23] R. Doc. 217-3 ("Trial Exhibit 3, Kylie Patz Birth Documents"); R. Doc. 217-13 ("Trial Exhibit 13, Medical Rec. Vivian Patz – Oschner Patient Health Summary"); R. Doc. 217-14 ("Trial Exhibit 14, Medical Rec. Vivian Patz – Oschner Visit 4/15/2016").

was, in fact, pregnant.[24] As such, Plaintiff Vivian Patz belonged to a protected class.

   2. <u>Defendants conceded at trial that they limited Ms. Patz's employment opportunities when they sent her home mid-shift without pay and took her off the schedule.</u>

An employee may be found to have suffered an adverse employment action under 42 U.S.C. § 2000(e)-2(a) if there is an "objective showing of a loss in compensation, duties, or benefits." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *see Hernandez v. Sikorsky Support Servs., Inc.* (5th Cir. 2012); *Green v. Administrators of Tulane Educational Fund*, 284 F.3d 642, 657 (5th Cir. 2002). Adverse employment actions include any action to "limit" an employee "in any way which would deprive or tend to deprive any individual of employment opportunities." 42 U.S.C. 2000e-2(a)(2), (m).

Thus, sending an employee home before the end of her shift without compensation is an adverse employment action. *EEOC v. Danny's Restaurant, et al.,* C.A. No. 3:16-CV-00769-HTW-LRA, 2018 U.S. Dist. LEXIS 168641 (S.D. Miss. Sept. 30, 2018) (holding that sending plaintiffs home before a scheduled shift was an adverse employment action because plaintiffs could not work and lost all potential earning from that shift). Preventing an employee from working a scheduled shift negatively impacts the employee's opportunity as contemplated under Title VII. *Id*.

Here, all parties agreed that Ms. Patz was sent home in the middle of her shift and was

---

[24] Defendants testified at trial that Ms. Patz only told them that she thought she might be pregnant, not that she was pregnant. However, for Title VII purposes, the distinction is meaningless – a plaintiff is considered a member of the protected class whether she was actually pregnant or was only potentially pregnant. *International Union v. Johnson Controls, Inc*, 499 U.S. 187 (1991) ("potential for pregnancy . . .  must be regarded, under the PDA, in the same light as explicit sex discrimination."), *In re Union Pacific R.R. Employment Prac. Lit*., 479 F.3d 936 (8th Cir., 2007) ("the Court held that discriminating against women on the basis of potential pregnancy was a violation of Title VII, as amended by the PDA."); *Kocak v. Community Health Partners of Ohio, Inc*., 400 F.3d 466 (6th Cir., 2005) ("Kocak cannot be refused employment on the basis of her potential pregnancy.").

taken off the schedule for the remainder of the week.[25] Shelly Jambon and Denise Esponge both testified that Vivian was sent home without pay, which was also established by Defendants' payroll records for Ms. Patz for the week of April 11, 2016. During her January 29, 2019 testimony, Ms. Esponge explicitly agreed that Vivian was "limited" in her ability to work for pay due to being sent home mid-shift.  Being sent home mid-shift without pay prevented Vivian Patz from earning the rest of her paycheck that shift and subsequent shifts.[26]

Because the evidence at trial showed, and Defendants concede, that Ms. Patz employment opportunities were "limited" when she was sent home mid-shift without pay and taken off the schedule, the adverse employment action element is met.

   3. <u>Uncontroverted testimony at trial established that Plaintiff Vivian Patz's pregnancy was at least a motivating factor in her suffering an adverse employment action.</u>

Under 42 U.S.C. 2000e-2(m), adverse employment actions are illegal when a protected status is at least a motivating factor for the action. This is so even if "other factors also motivated the practice." 42 U.S.C. 2000e-2(m).

Ms. Jambon testified at trial that Vivian told her four things in their April 11, 2016 conversation: (1) that she was or might be pregnant,[27] (2) that she had a history of miscarriages,[28] (3) could not lift more than ten pounds,[29] and (4) felt sick.[30] The contemporaneous note of their conversation stated: "Said she could not lift anything over 10 lbs because she was pregnant. Asked

---

[25] *See, e.g.,* R. Doc. 213 at 225:14-16 ("Q. When you sent Vivian home on April 11, 2016, was she sent home without pay? A. She was sent home without pay."); R. Doc. 214 at 246:6-18, 247:21-24, 297:10-13 ("Q. So, when this schedule was written, Vivian was put on it? A. Correct. Q. And she was later crossed off? A. Correct.").

[26] Sending Ms. Patz home also meets the "segregation" prohibition of 42 U.S.C. 2000e-2(a)(2), (m), as she was literally physically segregated from other employees.

[27] R. Doc. 213 at 231:20-24.

[28] *Id*. at 233:9-13.

[29] *Id*. at 231:25-232:6.

[30] *Id*. at 231:20-24.

for a doctor's excuse – has not seen a doctor. Told her to go see one and bring excuse back."[31] Ms. Jambon testified that as a result, she sent Vivian home mid-shift without pay.[32]

Only one of the four things Ms. Jambon says Vivian told her (that she was not feeling well) is even arguably not pregnancy-related. The other three were explicitly pregnancy related. Thus, because three of the four facts that prompted Ms. Jambon to send Vivian home mid-shift without pay were explicitly pregnancy-based, it is established that pregnancy was at least a motivating factor in sending Ms. Patz home, even if "other factors also motivated the practice."[33] The motion should therefore be granted.

## II.     Vivian Patz is entitled to a judgment as a matter of law for Defendants' violation of the ADA under the "regarded as" definition of disability.

The ADA prohibits adverse employment actions against employees who are defined as individuals with disabilities under 42 U.S.C. § 12102(1). That statute provides three definitions for the term "disability." 42 U.S.C. § 12102(1). It can be either "(A) a physical or mental impairment that substantially limits one or more major life activities, (B) a record of such an impairment, or (C) being regarded as having [an impairment]." 42 U.S.C. § 12102(1). Ms. Patz moved for her Rule 50(a) motion that Defendants discriminated against her under this third definition of an individual with a disability: that she was regarded as having an impairment.

An individual is "regarded as" having an impairment if she has been subjected to discrimination because of an actual or perceived impairment, <u>whether or not it limits or is perceived to limit a major life activity</u>. 42 US.C. § 12102(3)(A) (emphasis added). This prong

---

[31] R. Doc. 217-4.

[32] *See, e.g.,* R. Doc. 213 at 225:14-16 ("Q. When you sent Vivian home on April 11, 2016, was she sent home without pay? A. She was sent home without pay.")

[33] Cf. Fn. 5, *supra*, Title VII makes no distinction between someone who might be pregnant and someone who is actually pregnant. *International Union v. Johnson Controls, Inc,* 499 U.S. 187 (1991) ("potential for pregnancy . . . must be regarded, under the PDA, in the same light as explicit sex discrimination."),

protects individuals from employers who make decisions based on stereotypes and prejudice for the disabled. *Cannon v. Jacobs Field Services North America*, 813 F. 3d 586, 591 (5th Cir. 2016) ("The amended 'regarded as' provision reflects the view that 'unfounded concerns, mistaken beliefs, fears, myths, or prejudice about disabilities are just as disabling as actual impairments.'"), *quoting* 29 C.F.R. Pt. 1630, App. § 1630.2(1).

On day four of the trial on this matter, this Court denied all of Plaintiff's Rule 50(a) ADA motions on the grounds that a reasonable jury could reach different conclusions on whether Plaintiff Vivian Patz was disabled as defined by the ADA.[34] The Court relied on pre-2008, pre-ADA Amendments Act (ADAAA)[35] caselaw defining disabilities: *Ray v. Glidden Company*, 85 F.3d 227 (5th Cir. 1996) and *Moody v. M.W. Kellogg Company*, 176 F.3d 479 (5th Cir. 1999).[36] Both of these cases are distinguishable from the present case on the matter of "regarded as" prong.

The Fifth Circuit limited the *Ray* interpretation of the "regarded as" prong of disability in *EEOC v. EI Du Pont de Nemours & Company,* 480 F.3d 724 (5th Cir. 2007). In this case, the court found that because the employer in *Ray* regarded the employee as only being partially limited in his abilities because of the lifting restriction, the "regarded as" prong was not met. In contract, the

---

[34] R. Doc. 216 at 578:5-579:4. This additional legal briefing flows directly from the receipt of the transcript and Plaintiff's ability to review the cases orally cited by this Court.

[35] "Disability" under the ADA was never intended to be a restrictive inquiry. In 2008, the United States Congress passed the ADA Amendments Act of 2008 (ADAAA), Pub.L. No. 110–325, 122 Stat. 3553, which ushered in significant amendments that widened the definition and coverage of "disability." See 42 U.S.C. § 12102(4)(A). Congress specifically found that "[t]he definition of disability shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." *Neely v. PSEG Texas, Ltd. Partnership*, 735 F.3d 242, 245 n.4 (5th Cir. 2013). To that end, the amendments broadened the scope of the words "substantially limits" and "major" in the ADA's definition of disability. *Neely*, 735 F.3d at 245. The Fifth Circuit recently commented that these amendments "make it easier for people with disabilities to obtain protection under the ADA." *Cavazos v. Donahue*, 2016 WL 3654766, at *6 (S.D.Tex., 2016) (quoting *Cannon v. Jacobs Field Services N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016)).

[36] Post-ADAAA caselaw suggests that whether a pregnancy-related lifting restriction meets the ADA definition of disability does present a triable issue of fact. *Heatherly v. Portillo's Hot Dogs, Inc.,* No. 11-8480, 2013 WL 3790909, at *5-6 (N.D. Ill. July 19, 2013).

employer in *EI Du Pont de Nemours & Company* regarded their employee as restricted from all job tasks due to her impairment. 480 F.3d 724 at 729-30. Similarly, the employer in *Moody* did not perceive the employee as limited at all in her work duties. 176 F.3d 479 at *4.

The uncontroverted evidence at bar indicates that Defendant Sureway Supermarket regarded Plaintiff Vivian Patz much more like the employer in *EI Du Pont de Nemours & Company* than the employer in *Ray* or the employer in *Moody.* Defendant Sureway Supermarket did not regard Plaintiff Vivian Patz as only restricted from a narrow range of jobs. The testimony presented at trial demonstrated that once Plaintiff Vivian Patz told Shelly Jambon that she had high-risk pregnancies in the past and had a lifting restriction Ms. Jambon felt Plaintiff Vivian Patz could not work any aspect of any job at Sureway until she brought a doctor's note.[37] Ms. Jambon believed that because Plaintiff Vivian Patz did not feel well, she could not continue to work.[38]

To prove her claim under the "regarded as" prong of the ADA, Plaintiff Vivian Patz must prove that (1) she was a qualified employee, (2) she was regarded as having a physical impairment by Defendant, and (3) there was a nexus between the adverse employment action and her physical impairment. *See EEOC v. LHC Group, Inc.*, 773 F. 3d 688, 697 (5th Cir. 2014).

---

[37] R. Doc. 214 at 245:11-24 (Q. So, she told you that in her previous pregnancy she had a ten-pounds lifting restriction, correct? A. Correct. Q. And you say that she told you she thought she might be pregnant, correct? A. She thought she might be pregnant. Q. And she said that she couldn't lift ten pounds because she thought she might be pregnant, correct? A. And she wasn't feeling well, correct. Q. Did you ask her if there was anything that you could do to accommodate her at work that day?…A. No.); R. Doc. 214 at 249:16-24 (Q. She did not ask to go home, correct? A. Correct. She did not ask to go home. She said she wasn't feeling well, and she had had a miscarriage, a risky pregnancy. I'm assuming were both the same thing. So, in that conversation, I mean (Witness trails off). Q. When you heard her say those things you told her to go home and not to come back until she had a doctor's note, correct? A. Correct.); R. Doc. 214 at 363:20-23 (Q. You asked for the note because you needed to know what her limitations were, correct? A. Because she said she wasn't feeling good, so I'm assuming something could have been going wrong.)

[38] R. Doc. 214 at 252:5-9 (Q. You expected her to know she should check in every day, correct? A. At least let us know she was okay and that -- when she could return to work. That's what we were asking because she said she didn't feel good.)

1. <u>Uncontroverted testimony at trial established that Plaintiff Vivian Patz was qualified for her position</u>.

A "qualified individual" is one who, with or without reasonable accommodations, can perform the essential functions of the job. 42 U.S.C. § 12111(8). The term "essential functions" means the fundamental job duties of the employment position Plaintiff Vivian Patz held: cashier at Sureway Supermarket.[39]

Ms. Jambon testified that the functions of a cashier include scanning groceries, bagging or boxing groceries, restocking shelves, bringing in shopping carts, and folding t-shirts.[40] Ms. Jambon testified that a cashier at Sureway Supermarket could do their job without lifting heavy objects:

> Q. So, there were ways for a cashier, in 2016, to process a customer's items at checkout that didn't require physically lifting the customer's items, correct?
> A. Correct.
> Q. So, you don't dispute that a cashier at Sureway could do their job without lifting heavy items, correct?
> A. Correct.

R. Doc. 213 at 231:7-13. Ms. Jambon detailed in her testimony many ways a cashier can ring up an item without lifting heavy items and that bar codes for heavy items are available at the register for cashiers to "punch the numbers in" instead of lifting.[41] No witnesses asserted that Ms. Patz was no longer qualified to do her job. Ms. Jambon even stated that Ms. Patz could have been accommodated and that she would have accommodated her, such as being asked to stock t-shirts and swimsuits rather than heavier items.[42] Because Vivian could handle all the essential functions of a cashier job at Sureway Supermarket, she was a qualified employee.

---

[39] R. Doc. 213 at 105:1-3 ("Q. Okay.  When you first worked for Sureway, what was your position there? A. Cashier").
[40] *Id*. at 229:2-17.
[41] R. Doc. 213 at 230:18-231:13.
[42] R. Doc. 214 at 345:2-22.

2. <u>Uncontroverted testimony at trial established that Plaintiff Vivian Patz was regarded as having a physical impairment by Defendant Walter H. Maples, Inc.</u>

Under 42 US.C. § 12102(3)(A), an individual meets the requirement of "being regarded as having such an impairment" if the individual has either an actual *or a perceived* physical or mental impairment – whether or not the impairment actually limits or is perceived to limit a major life activity. In this context, a physical impairment is defined as:

> "[A]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genitourinary; hemic and lymphatic; skin; and endocrine."

45 CFR § 84.3(j)(2)(i) (1985), *School Bd. of Nassau Cty. v. Arline*, 480 US 273, 280 (1987) (applying this definition to 'physical impairment' of 42 US.C. § 12102(3)(A)).

It is important to note that "impairment" has a much lower threshold than "disability."[43] A person has an impairment if their condition affects a body system. 45 CFR § 84.3(j)(2)(i). Then, if that impairment substantially limits a major life activity, it can become a disability. 42 US.C. § 12102(1)(A). But for "regarded as" protections under the ADA, no "disability" is required – only the much-easier-to-establish "impairment." 42 US.C. § 12102(1)(C); (3)(A) (regarded as protections apply "whether or not the impairment limits or is perceived to limit a major life activity.")

And after 2008, the threshold for finding an impairment is very low. That year, Congress passed the ADA Amendments Act of 2008, which established that "the question of whether an individual's impairment is a disability under the ADA **should not demand extensive analysis**."

---

[43] *See, e.g.,* Burton v. Freescale Semiconductor, Inc., 798 F.3d 222, 230, 31 A.D. Cases 1533 (5th Cir., 2015).

ADA Amendments Act of 2008, PL 110-325, § 2(b)(5) (emphasis added).[44] *See Cannon, supra*,

813 F.3d at 592 ("The evidence favoring Cannon again easily passes muster under the revised

standard requiring only the perception that he suffered from a physical impairment.")

Thus, to prove that Defendants regarded Ms. Patz as having an impairment, all that needs

be shown is that they regarded her as having a condition that "affected" a body system. 45 CFR §

84.3(j)(2)(i). And here, Ms. Jambon testified that Ms. Patz told her that she was or might be

pregnant, suffered high-risk pregnancies in the past, and could not lift over ten pounds.[45] This

testimony was corroborated by the note written on April 11, 2016 which stated: "Said she could

not lift anything over 10 lbs because she was pregnant. Asked for a doctor's excuse – has not seen

a doctor. Told her to go see one and bring excuse back."[46] This note was placed in Ms. Patz's

personnel file.[47] Defendants put on no evidence that they doubted Ms. Patz's lifting restriction. To

the contrary, Ms. Esponge testified that Defendants were concerned about Ms. Patz's safety based

on her lifting restrictions and history of high-risk pregnancies and that is why Ms. Patz was sent

home.[48] As such, the uncontroverted evidence was that Defendants regarded Ms. Patz as having a

physical impairment.

3.  Uncontroverted testimony at trial established that there was a nexus between the adverse
    employment actions and Ms. Patz' impairment.

Plaintiff Vivian Patz suffered two adverse employments actions: first, she was sent home

mid-shift on April 11, 2016 and taken off the schedule,[49] and second, she was terminated on April

---

[44] For this reason, case law pre-dating the ADA Amendments Act of 2008 (ADAAA) generally should not be relied upon in determining impairment, because the 2008 amendments were enacted to lower the standard of functional limitation necessary to show that a person is impaired. *Molina v. D.S.I. Renal, Inc*., 11-cv-00028, R. Doc. 17. (W.D. Tex., May 24, 2012), *citing* 29 CFR § 1630.2(j)(1)(iv).
[45] R. Doc. 213 at 231:20-233:13.
[46] R. Doc. 217-4 ("Trial Exhibit 4, Vivian Patz's Personnel File").
[47] *Id*.
[48] R. Doc. 214 at 412:15-22.
[49] *Id*. at 246:6-13.

15, 2016.[50] Both actions are prohibited by the ADA as "limiting" an "employee in a way that adversely affects the opportunities." 42 U.S.C. § 12112(b)(1). If there was a nexus between either adverse action and Ms. Patz's impairment, then an ADA violation is established. *See EEOC v. LHC Group, Inc., supra*, 773 F.3d at 697 (nexus means "an adverse employment decision on account of" the disability).

Here, all witnesses at trial unanimously agreed that the adverse employment actions flowed directly from Ms. Patz' impairment. Ms. Jambon testified that she only began the chain of adverse employment actions once she heard that Ms. Patz was not lifting heavy things.[51] She admitted that she then learned from Ms. Patz of her pregnancy-related medical condition and her inability to lift more than ten pounds before making the decision to send Ms. Patz home mid-shift without pay and take her off the schedule.[52]

Ms. Jambon testified that Vivian told her four things in their April 11, 2016 conversation: (1) that she was or might be pregnant,[53] (2) that she had a history of miscarriages,[54] (3) could not lift more than ten pounds,[55] and (4) felt sick.[56] The contemporaneous note of their conversation stated: "Said she could not lift anything over 10 lbs because she was pregnant. Asked for a doctor's excuse – has not seen a doctor. Told her to go see one and bring excuse back."[57] Ms. Jambon testified that as a result, she sent Vivian home mid-shift without pay.[58]

Thus, the adverse employment action of sending Vivian home flowed directly and

---

[50] *Id*. at 272:2-7.
[51] R. Doc. 213 at 231:14-232:6.
[52] *Id*.
[53] *Id*. at 231:20-24.
[54] *Id*. at 233:9-13.
[55] *Id*. at 231:25-232:6.
[56] *Id*. at 231:20-24.
[57] R. Doc. 217-4.
[58] R. Doc. 213 at 225:14-16; R. Doc 214 at 246:6-18, 247:21-24.

explicitly from the perceived impairment. None of the adverse employment actions would have occurred if Ms. Jambon had not perceived of Vivian as having an issue with lifting. This establishes at least a nexus between the adverse employment actions and Vivian's impairment. Accordingly, Plaintiffs' motion should be granted.

III.   **Plaintiff Vivian Patz is entitled to a judgment as a matter of law under the ADA for Defendants' failure to make a reasonable accommodation.**

At trial, Plaintiff Vivian Patz made a Rule 50(a) motion for Defendants' violation of the Americans with Disabilities Act for Defendant's failure to make a reasonable accommodation.[59] The term "accommodation" means making modifications to the workplace that allow a person with a disability to perform the essential functions of the job, to attain the level of performance available to similarly situated employees who are not disabled, or to enjoy equal benefits and privileges of employment as are enjoyed by similarly situated employees who are not disabled. 29 C.F.R. 1630.2(o). Reasonable accommodations may include, but are not limited to: (a) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; or (b) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices. 42 U.S.C. 12111(9).

To succeed on her claim for failing to provide a reasonable accommodation, Plaintiff Vivian Patz must prove that (1) she was a qualified employee if she had been provided with reasonable accommodations, (2) she was regarded as having a disability; (3) she requested an accommodation; (4) providing an accommodation would have been reasonable; and (5) Defendant failed to provide a reasonable accommodation.

---

[59] R. Doc. 215 at 537:1-538:8.

1. <u>Uncontested testimony at trial established that Plaintiff Vivian Patz was a qualified employee, and could do her job had she been given a reasonable accommodation.</u>

As set forth in Section II(1), *supra*, the undisputed evidence presented at trial, including Ms. Jambon's testimony, established that Ms. Patz was a qualified employee under 42 U.S.C. § 12111(8) because she could perform the job of a cashier with her lifting limitation.[60] Defendants did not submit any evidence to the contrary, and in fact confirmed that Ms. Patz was a qualified employee.[61]

2. <u>Undisputed testimony at trial established that Plaintiff Vivian Patz was regarded by Defendant as having a physical impairment</u>

As set forth in Section II(2), *supra*, the undisputed evidence presented at trial established that Defendants regarded Ms. Patz as having a physical impairment, namely her pregnancy-related medical condition and lifting restriction.[62] Indeed, that physical impairment was the reason that Vivian was sent home from work on April 11, 2016.[63]

3. <u>Undisputed testimony at trial established that Plaintiff Vivian Patz requested an accommodation.</u>

The undisputed evidence at trial also established that Vivian Patz requested an accommodation. Ms. Jambon testified that Ms. Patz told her on April 11, 2018 that she could not lift more than ten pounds:

> Q. Do you recall Vivian telling you that she couldn't lift more than ten pounds?
> A. Correct.
> Q. She did tell you that on April 11th?
> A. She told me she couldn't lift more than ten pounds, and I asked her why.  She thought she was pregnant, because -- and she wasn't feeling well.

---

[60] R. Doc. 213 at 231:7-13.
[61] *Id.*; *see also* R. Doc. 213 at 226:5-11.
[62] R. Doc. 213 at 231:20-233:13; R. Doc. 217-4 ("Trial Exhibit 4, Vivian Patz's Personnel File").
[63] R. Doc. 213 at 233:4-8.

R. Doc. 213 at 231:25-232:6. Ms. Patz[64] and Ms. Esponge[65] testified to the same. This was the accommodation Ms. Patz asked for: to be able to continue doing her job without lifting objects heavier than ten pounds.[66] Ms. Patz testified that she was already doing her job this way by asking customers to lift the items for her or by ringing up the items with the bar codes.[67] It is undisputed that Ms. Patz asked to do her job without lifting over ten pounds, and thereby asked Defendant for an accommodation.

4. Undisputed testimony at trial established that reasonable accommodations were available.

An employer is not required to make a reasonable accommodation if such accommodations are not available. However, the undisputed evidence at trial established that reasonable accommodations were available. Ms. Patz testified that she did her job for several weeks, making her own minor adjustments at work while performing her job duties.[68] Further, Ms. Jambon testified that Ms. Patz's lifting restriction could have easily been accommodated, such as stocking t-shirts and swimsuits rather than lifting heavy objects.[69] Ms. Jambon testified that Ms. Patz could have done her job without lifting more than ten pounds. For instance, Ms. Jambon testified that bar codes for heavy items were available at the register that could be used to ring the item up instead of lifting the item over the flat scanner.[70] In fact, Ms. Jambon had accommodated other similarly situated employees with lifting restrictions in the past without any issue.[71] Defendant provided no evidence to contest the fact that reasonable accommodations were available.

---

[64] R. Doc. 213 at 111:5-13.
[65] R. Doc. 214 at 402:24-403:16.
[66] A qualified individual need not use "magic words" to invoke the protections of the ADA. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444 (5th Cir. 2017).
[67] R. Doc. 213 at 110:11-111:4.
[68] *Id.*
[69] R. Doc. 214 at 345:2-22.
[70] R. Doc. 213 at 230:14-231:10.
[71] *Id.* at 209:16-210:16, 212:19-22, 213:2-216:7; R. Doc. 214 at 335:1-9.

5. Undisputed testimony at trial established that Defendant did not provide any accommodations.

The undisputed testimony at trial also established that Defendant did not provide any accommodations to Ms. Patz. Specifically, Ms. Jambon testified that she did not provide Ms. Patz any accommodation for her impairment.[72] Instead, Ms. Jambon testified that she sent Ms. Patz home on April 11, 2018 and did not allow Ms. Patz to continue working with the lift restriction requested by her or by providing any other accommodation.[73] Ms. Jambon also testified that she did not allow Ms. Patz to work for the remainder of the week while Ms. Patz was acquiring a doctor's note.[74] Ms. Patz testified that she could have continued working without lifting more than ten pounds that April 11th and every day thereafter while she was working to acquire her doctor's note.[75] Defendant conceded that no accommodation was provided.

Accordingly, Plaintiffs' motion should be granted.

## IV. Plaintiff Vivian Patz is entitled to a judgment as a matter of law because Defendants conceded at trial that they did not engage in the ADA-required interactive process.

An employer is required to engage in an "interactive process" with qualifying workers needing accommodation. *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (finding that once an employee's need for accommodation under the ADA is "known" to the employer, it then is obligated to commence an "interactive process" – a "meaningful dialogue with the employee to find the best means of accommodating that disability") (*citing Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)). This process is meant to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). The duty to engage in the interactive

---

[72] R. Doc. 214 at 242:16-243:4.
[73] *Id.*
[74] *Id.*
[75] R. Doc. 213 at 110:11-14.

process with a disabled employee is mandatory and "requires communication and good-faith exploration of possible accommodations." *Kleiber v. Honda of Am. Mfg*., 485 F.3d 862, 871 (6th Cir.2007); *Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 312 (3d Cir.1999); *Baert v. Euclid Beverage, Ltd*., 149 F.3d 626, 633-34 (7th Cir.1998). The interactive process has been considered mandatory in the context of a pregnancy disability. *Wanamaker v. Town of Westport Bd. of Educ*., 11 F.Supp.3d 51, 78 (D. Conn., 2014). Further, an employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee. *See Cutrera v. Bd. of Supervisors of La. State Univ*., 429 F.3d 108, 113 (5th Cir. 2005); *Reyes v. Texas Dep't of Criminal Justice*, No. A-16-CA-0054-SS, 2017 WL 4979844 (W.D. Tex. Oct. 31, 2017).

Here, Ms. Jambon testified that Ms. Patz explicitly told her on April 11, 2016 that she could not lift more than ten pounds and that she was pregnant.[76] This is corroborated by the April 11, 2016 note in Ms. Patz's personnel file.[77] Ms. Jambon testified that she did not engage Ms. Patz further in a conversation on what needs she might have or how Ms. Patz could continue working her job:

> Q.    Did you have a back-and-forth dialogue with Vivian during that conversation on April 11th about what type of accommodations she might need?
>
> A.    No.

R. Doc. 214 at 244:2-5; *see also Id*. at 245:20-246:5. Ms. Jambon and Ms. Esponge testified that Ms. Jambon sent Ms. Patz home immediately.[78] All witnesses agreed that there was no back-and-forth dialogue of seeking accommodation prior to Ms. Patz's termination.[79]

---

[76] R. Doc. 213 at 231:25-232:6.
[77] R. Doc. 217-4.
[78] R. Doc. 214 at 242:16-243:4, 401:1-18.
[79] *Id*. at 244:2-5, 401:23-402:16, 405:20-406:13.

Accordingly, Plaintiff Vivian Patz is entitled to judgment as a matter of law on Defendant's failure to engage in the ADA-required interactive process of seeking accommodation.

## <u>CONCLUSION</u>

For the reasons above, Plaintiff Vivian Patz respectfully asks this Court to grant her judgment as a matter of law or, in the alternative, a new trial.


Respectfully Submitted,

VIVIAN PATZ, by and through counsel,

/s/ *William Most*_____
William Most (La. Bar No. 36914)
Amanda Hass (La. Bar No. 37718)
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023
Email: williammost@gmail.com

And

Kerry A. Murphy (La. Bar No. 31382)
Catherine E. Lasky (La. Bar No. 28652)
LASKY MURPHY LLC
715 Girod Street, Suite 250
New Orleans LA 70130
Telephone: (504) 603-1500
Facsimile: (504) 603-1503